**In re Jerry Pete VERHELST, Sr., aka Dairy Queen of Alma, Inc., aka Bernard's Pie Plus, aka Auto Jungle Salvage, Debtor.**

**Bobby CARTER, Plaintiff,**

**v.**

**Jerry Pete VERHELST, Sr., aka Dairy Queen of Alma, Inc., aka Bernard's Pie Plus, aka Auto Jungle Salvage, Defendant.**

**Bankruptcy No. 92–70703.**
**AP No. 93–7509.**

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 23, 1993.

Fred Caddell, Fort Smith, AR, for plaintiff.

David Charles Gean, Fort Smith, AR, for defendant/debtor.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court is the plaintiff's (Carter) Complaint to Determine Dischargeability of Debt Under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6). The Court held a hearing on the matter on May 25, 1993.

### I. *Jurisdiction*

The Court has jurisdiction over this pending matter pursuant to 28 U.S.C. § 1334. Further the above proceeding is a core proceeding within 28 U.S.C. § 157(b)(2). The following memorandum opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### II. *Findings of Fact*

The parties stipulated at trial that: (1) Carter was employed by the defendant (Verhelst) at Auto Jungle Salvage; (2) Carter sustained an injury during his employment at Auto Jungle Salvage; (3) Verhelst was required to carry workers' compensation insurance pursuant to Arkansas workers' compensation law; and (4) Carter obtained a $10,-000.00 judgment against Verhelst as a result of an injury sustained during Carter's employment. The Court accepted into evidence plaintiff's exhibit #1 which is a copy of Carter's October 27, 1992 judgment against Verhelst.

At trial Carter testified that he began working for Verhelst in 1988. Carter stated that during his employment with Verhelst the usual minimum wage and workers' compensation notices were posted on a bulletin board at Auto Jungle Salvage.

Carter testified that in 1989, while at work, he severed the end of his thumb. Carter told the Court that Verhelst paid all of the medical expenses and sick leave resulting from this injury. Carter testified that Verhelst told him that Verhelst did not want to turn in any claims on his insurance because filing claims would cause the insurance rates to increase.

Carter testified that in 1990 he hurt his back while at work. Carter stated that Verhelst, again, told him that Verhelst would pay the expenses out of his pocket because Verhelst did not want his insurance rates to increase. Carter stated, however, that Verhelst did not pay all of the medical bills.

Carter stated that he would not have continued to work for Verhelst had he known that Verhelst did not have workers' compensation coverage for the employees at Auto Jungle Salvage. Carter testified that he relied upon Verhelst's statements and the notices posted on the bulletin board regarding workers' compensation insurance.

Verhelst testified that from 1984 through 1987 he periodically had workers' compensation insurance for his employees at Auto

Jungle Salvage. Verhelst stated that he knew he was required to carry workers' compensation insurance for his employees at Auto Jungle Salvage. He stated that he did not carry workers' compensation insurance because the insurance was too expensive. Verhelst testified that he did not have the money to pay for workers' compensation insurance.

Verhelst stated that he told all his employees that he did not carry any workers' compensation insurance. Verhelst further testified that he did not have a bulletin board in office, and that he did not know what Carter was talking about when he said that notices were posted on a bulletin board.

Verhelst testified that during the relevant time period, Verhelst paid the medical expenses of any employee who had been injured on the job. Verhelst stated that he had not posted any notices that he carried workers' compensation insurance.

Don Fuller, former supervisory employee of Verhelst, testified that he worked for Verhelst from 1983 until 1990. He stated that he hired Carter to work at Auto Jungle Salvage. Fuller testified that when he hired Carter, he did not make any representation to Carter that Auto Jungle Salvage had workers' compensation insurance. Fuller stated that he knew of no representations made that Auto Jungle Salvage had workers' compensation insurance. Fuller stated that he submitted a claim on the workers' compensation insurance when Auto Jungle Salvage had the insurance, and that Verhelst told him when the workers' compensation insurance was no longer in effect.

Fuller stated that he did not know of any bulletin board at the Auto Jungle Salvage shop office. He stated that there was a chalk board on which would be written work instructions, but that no notices were posted on this chalk board. Fuller stated that there was a counter in the Auto Jungle Shop where signs were posted, but that there were no notices concerning workers' compensation insurance posted on the counter. Fuller stated, however, that he did not know whether there was a bulletin board in Verhelst's private office, and that if there were such a

board with workers' compensation notices he would not have known about it.

Tom Mellette testified that he was employed by Verhelst from 1986 through 1990. Mellette stated that he had one injury while working for Verhelst, and that he was told that Verhelst would take care of it. Mellette testified that he never saw any notice of workers' compensation insurance posted at Auto Jungle Salvage, but that it was possible that the notices were there and he had not seen them. Mellette testified that he was never told that Auto Jungle Salvage had workers' compensation insurance.

Mrs. Pat Verhelst testified that she wrote all the checks for the Verhelst business. Mrs. Verhelst stated that there were never any notices of workers' compensation insurance posted at their business.

The Court made a finding at trial that the debtor knew he was required under Arkansas law to provide workers' compensation insurance for his employees. Further, the Court made a finding that Carter's testimony regarding Verhelst's representations that Verhelst would pay the medical bills because he did not want Auto Jungle Salvage's insurance rates to increase more creditable than Verhelst's testimony on this issue. The Court also finds Fuller's and Mellette's testimony that Verhelst did not tell them that Auto Jungle Salvage had workers' compensation insurance to be persuasive. The Court does not credit Verhelst's testimony on any of these issues.

## III. *Conclusions of Law*

The burden of proof for the dischargeability of debts under 11 U.S.C. § 523(a) is on the plaintiff. *See In re Magnusson,* 14 B.R. 662, 667 (Bankr.N.D.N.Y.1981). This burden is satisfied under the preponderance of the evidence standard. *See Grogan v. Garner,* 498 U.S. 279, 289, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

### A. *11 U.S.C. § 523(a)(2)(A)*

■ Under 11 U.S.C. § 523(a)(2)(A) of the Code, a court may refuse a debtor a discharge of debt. The Code states:

11 U.S.C. § 523. Exception to discharge

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Pursuant to 11 U.S.C. § 523(a)(2)(A) the creditor bears the burden of proving that the (1) debtor made false representations; (2) debtor knew at the time made that the representations were false; (3) representations were made with the intention and purpose of deceiving the creditor; (4) creditor reasonably relied on the representations; (5) creditor sustained the alleged injury as a proximate result of the representations having been made; and (6) debtor obtained, either directly or indirectly the lost property, services, or extension, renewal, or refinancing of credit. *See In re Kissinger*, 106 B.R. 180, 181 (Bankr.E.D.Ark.1989); *In re Fritz*, 88 B.R. 434, 435 (Bankr.S.D.Fla.1988).

### 1. *False Representation*

When Verhelst made the statement that he would pay Carter's medical expenses because Verhelst did not want to submit the claim on Auto Jungle Salvage's insurance, Verhelst made a false representation that Auto Jungle Salvage had workers' compensation insurance.

### 2. *Debtor Knew Representation Was False*

Based on Verhelst's testimony, the Court holds that Verhelst knew at the time of Carter's employment that Auto Jungle Salvage did not have workers' compensation insurance. Thus, Verhelst knew he was making a false statement.

### 3. *Representation Was Made With Intent to Deceive*

Verhelst made the false representation with the intent to deceive. Verhelst testified that he knew he did not have workers' compensation insurance for Auto Jungle Salvage. Nonetheless when Verhelst told Carter that Verhelst would pay for Carter's medical bills instead of submitting a claim on non-existent workers' compensation insurance, Verhelst intended to deceive Carter.

### 4. *Reliance*

Carter relied on the false statement when he continued employment after his first injury and accepted the possibility of future work-related injuries. Carter testified that because of the danger involved in working in a salvage yard, he would not have worked at Auto Jungle Salvage had he known that Verhelst did not have workers' compensation insurance.

### 5. *Results of Representation Are Proximate Cause of Injury*

"The proximate cause element of section 523 requires simply that the action of the debtor was the act, without which the claimant would not have suffered the loss complained of." *In re Maier*, 38 B.R. 231, 233 (Bankr.D.Minn.1984).

Carter alleges that Verhelst caused Carter to suffer the loss of his right to workers' compensation insurance benefits. The facts reflect that Verhelst's failure to provide workers' compensation insurance denied Carter his right to such insurance.

### 6. *The Debtor Obtained, Either Directly or Indirectly the Lost Money, Property, Services, or Extension, Renewal, or Refinancing of Credit*

Here, Carter fails in his burden of proof. In order to succeed Carter would have to prove that Verhelst actually obtained money, property or services, or an extension, renewal or refinancing of credit from Carter. *See In re Fritz*, at 434. The record is clear that while Carter lost his right to workers' compensation insurance, Verhelst did not obtain any money, property, services, or extension, renewal, or refinancing of credit from Carter.

Carter has failed to carry his burden of proof that Verhelst's debt to Carter is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### B. *11 U.S.C. § 523(a)(4)*

■ 11 U.S.C. § 523 states:

\* \* \* \* \* \*

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

11 U.S.C. § 523(a)(4).

Carter alleges that Verhelst committed fraud while acting in a fiduciary capacity. Consequently neither embezzlement nor larceny is an issue.

■ "Fiduciary capacity" for purposes of nondischargeability can be established where there is "a clear fiduciary duty on the part of corporate officers to a corporation with regard to the proper treatment of corporate assets over which the corporate officer has control." *In re Collins*, 137 B.R. 754, 756 (Bankr.E.D.Ark.1992) (citing *In re Long*, 774 F.2d 875, 880–81 (8th Cir.1985)).

■ Whether Verhelst, as Carter's employer, served in a fiduciary capacity is a question which must be decided by federal law. *See In re Hultquist*, 101 B.R. 180, 185 (9th Cir. BAP 1989). Bankruptcy cases have consistently held that an employer with an obligation to obtain workers' compensation, as is the case in Arkansas, does not serve as a fiduciary for the employee. *See In re France*, 138 B.R. 968, 970 (Bankr.D.Colo. 1992); *In re Collins*, 109 B.R. 541, 543 (Bankr.D.Mass.1989); *Kraemer v. Crook*, 94 B.R. 207, 209 (N.D.Ga.1988), *Aff'd mem.*, 873 F.2d 1406 (11th Cir.1989).

Carter has failed to carry his burden of proof that Verhelst's debt to Carter is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

### C. *11 U.S.C. § 523(a)(6)*

■ Dischargeability of a debt may be denied pursuant to 11 U.S.C. § 523(a)(6) which states:

\* \* \* \* \* \*

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). The debtor's injury to another entity or to the property of another entity must be both willful and malicious. *See In re Long*, 774 F.2d 875, 880–81 (8th Cir.1985). The creditor's standard of proof on these issues is by a preponderance of the evidence. *See In re Littleton*, 942 F.2d 551, 554 (9th Cir.1991).

Congress tells us in § 523(a)(6) that malice and willfulness are two different characteristics. They should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable. We are convinced that if malice, as it is used in used in § 523(a)(6), is to have any meaning independent of willful it must apply only to conduct more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from mere legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice, absent some additional 'aggravated circumstances'.... **we believe nondischargeability turns on whether the conduct is (1) headstrong and knowing ('willful') and, (2) targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm.** *In re Long*, 774 F.2d at 880–81 (emphasis added).

#### a. *Willful*

There is little doubt that Verhelst's decision not to purchase workers' compensation insurance for Auto Jungle Salvage was willful. Verhelst knew that he was required to

carry workers' compensation for his employees. He deliberately chose not to do so. As to Carter, Verhelst knowingly led him to believe that he had workers' compensation coverage.

### b. *Malicious*

The Court also concludes that the evidence establishes that Verhelst's intent was malicious as the conduct was directed toward Carter. The Eighth Circuit specifically discusses the burden of proving "malicious" under section 523(a)(6) of the Code. The Eighth Circuit defines malicious as "whether the debtor's conduct is ... targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.*

Based on the testimony of the witnesses, the Court finds that Verhelst represented to all of his employees except Carter that he did not have workers' compensation insurance. Verhelst told Carter that Verhelst would pay Carter's medical expenses because Verhelst did not want Auto Jungle Salvage's insurance rates to increase. Verhelst either told his other employees that he did not have workers' compensation insurance, or that he did not make any representation concerning workers' compensation.

Carter relied upon Verhelst's representations to him and continued to work for Auto Jungle Salvage. Thus, Verhelst's conduct targeted Carter for financial harm in the event of an injury on the job, which is exactly what happened.

Carter has successfully carried his burden of proof that Verhelst's debt to Carter is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1]

### IV. *Conclusion*

Based on the above reasoning, the Court holds that the plaintiff's Complaint to Determine Dischargeability of Debt Under §§ 523(a)(2)(A), (4), and (6) is granted. Car-

ter's $10,000.00 judgment against Verhelst which resulted from an injury sustained during Carter's employment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

---

1. The Court credits Carter's testimony that there were notices posted concerning workers' compensation. Moreover the Court credits Fuller's and Mellette's testimony that while they did not see the notices it was possible for the notices to have been posted. Nonetheless, there is no evi-dence as to what these notices said, and whether the notices were effective for the relevant years. Therefore the Court's holding on Carter's burden of proof under 11 U.S.C. § 523(a)(6) is based on the oral representations made by Verhelst to his employees.