In re James Franklin **ADKINS**, Debtor.

**Ellen NICHOLSON, Plaintiff,**

v.

**James Franklin ADKINS, Defendant.**

**Bankruptcy No. 92–13135C–7G.
Adv. No. 93–2064.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

March 8, 1995.

Phillip Bolton, Greensboro, NC, for debtor/defendant.

Marion G. Follin, III, Greensboro, NC, for plaintiff.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This action to determine the dischargeability of a debt came before the court for trial on February 6, 1995. The issue before the court is whether a judgment debt resulting from the failure of J.F. Adkins, Inc. to maintain workers' compensation insurance coverage for its employees should be excepted from discharge under 11 U.S.C. § 523(a)(2) or § 523(a)(6). For the following reasons, the court concludes that this debt should not be excepted from discharge.

### FACTS

In October, 1989, Ellen Nicholson ("Plaintiff") began working as a millwright for J.F. Adkins, Inc. ("Adkins, Inc."), a corporation engaged in the business of installing industrial equipment. Plaintiff's husband, Thomas Nicholson, was a superintendent for Adkins, Inc. in 1989 and 1990. Mr. Nicholson earlier had worked for Adkins, Inc. as a superintendent between 1974 and 1984. On October 4, 1990, approximately one year after she began this job, Plaintiff fell from the second or third step of a ladder while installing industrial piping on a job site in Wilson, North Carolina. When she fell, Plaintiff hit her head, neck and back on a piece of equipment. She remained at work that day and performed some light tasks but was unable to continue rigging equipment. Mr. Nicholson, as job superintendent for Adkins, Inc., filed a document with the company secretary in Greensboro in which he reported the accident. Over the next couple of weeks, Plaintiff continued to suffer from dizziness, back pain, and weakness and numbness in her left leg. She ultimately sought medical treatment while in Florida with her family. She was initially diagnosed with degenerative disc disease exacerbated by her fall. She saw the Florida doctor on several occasions. She also received treatment from a doctor in Greensboro who concluded that she had an acute cervical lumbar strain from her work-related injury.

On April 22, 1992, the North Carolina Industrial Commission awarded Ms. Ni-

cholson $21,650.71 for the injuries she received in the course of her employment with Adkins, Inc. The Industrial Commission reached certain factual and legal conclusions contained in its order which was offered into evidence by Plaintiff. These findings and conclusions are binding upon the parties in this action.[1] Specifically, the Industrial Commission concluded that at the time of this injury on October 4, 1990, the parties were subject to the provisions of the North Carolina Workers' Compensation Act and that Adkins, Inc. was in violation of the Act because at the time of the accident it was neither covered by workers' compensation insurance nor had it provided proof of financial ability to qualify as a self-insurer under the Workers' Compensation Act.[2] The Commission also found that the Debtor was the alter ego of Adkins, Inc., and was personally liable for the amount owed by Adkins, Inc.

In addition to the findings of the Industrial Commission, the court considered the other evidence that was presented at the trial on February 6, 1995. This evidence showed that although Adkins, Inc. was not insured on October 4, 1990, Adkins, Inc. had been insured during a portion of 1990. In his capacity as a supervisor, one of Thomas Nicholson's responsibilities was to file accident reports when employees were injured. He testified that during the period of 1974–84, he filed numerous reports for employees, that these claims were covered and that he believed the company had maintained workers' compensation coverage during this earlier period. He testified further that several employees were injured during 1989–90 and that their medical bills also were covered by workers' compensation insurance. The evidence did not show the circumstances under which Adkins, Inc. ended up having no workers' compensation insurance coverage on October 4, 1990. Hence, it is not apparent

whether the absence of coverage was the result of a negligent omission or a calculated decision on the part of Adkins, Inc. or the Debtor. The evidence did not show when the coverage ended or for how long it had been terminated before Plaintiff's accident. There also was no showing as to when the Debtor first became aware that Adkins, Inc. had no workers' compensation coverage nor how long that date was prior to Plaintiff's accident.

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 6, 1992 and converted to Chapter 7 in February, 1993. As the issues of damages and liability have already been resolved in the administrative hearing, the court is left with the sole issue of the dischargeability of the judgment debt in this Chapter 7 case.

## DISCUSSION

■ At the outset, the court acknowledges the general policy that exceptions to discharge should be construed strictly against the creditor and liberally in favor of honest debtors. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988); *In re Murray*, 116 B.R. 473 (E.D.Va.1990); *In re Tester*, 62 B.R. 486 (W.D.Va.1986). Further, in dischargeability actions, the burden is on the creditor to establish each element of its claim by a preponderance of the evidence. *See Combs v. Richardson*, 838 F.2d 112 (4th Cir. 1988); *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### I. Fraud, false representation or false pretenses.

■ Plaintiff first claims that this debt should be excepted from discharge because Debtor employed her without revealing that he lacked workers' compensation coverage and that this constituted "false pretenses, a

---

1. The court gives collateral estoppel effect to the facts and issues decided by the North Carolina Industrial Commission. The elements of collateral estoppel are as follows: (1) the issue sought to be precluded is the same as that involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *Combs v. Richardson*, 838 F.2d

112, 115 (4th Cir.1988); *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973). The court finds that these elements are present in this case.

2. N.C.Gen.Stat. § 97–93 requires employers to maintain insurance or furnish the Commissioner of Insurance with proof of financial ability to provide compensation.

false representation, or actual fraud" within the meaning of 11 U.S.C. § 523(a)(2). Plaintiff has the burden of establishing the following elements in a fraud or false representation claim under this section: (1) that the debtor made a representation; (2) that at the time of making the representation, the debtor knew it was false; (3) that the debtor made the representation with the intention and purpose of deceiving the creditor; (4) that the creditor relied on the representation; and (5) that the creditor sustained a loss as a result of that reliance. *In re Booker,* 165 B.R. 164 (M.D.N.C.1994); *In re Criswell,* 52 B.R. 184 (E.D.Va.1985); *In re Showalter,* 86 B.R. 877 (W.D.Va.1988).

▆ Plaintiff failed to meet her burden of establishing that the debt should be excepted under § 523(a)(2)(A). There was no showing of fraud, a false representation or false pretenses at the time Adkins, Inc. hired Plaintiff. To the contrary, the evidence offered by Plaintiff tends to show that the company was covered by workers' compensation insurance when Plaintiff was hired and for at least part of the period of time between the date she was hired and the date she was injured. Also, there was no showing that at the time Plaintiff was hired the Debtor made any express or implied representation regarding insurance coverage or that Plaintiff relied on any such representation.

▆ Since Adkins, Inc. was not insured at the time of Plaintiff's injury, it is clear that coverage for Adkins, Inc. terminated at some point between October, 1989, when she was hired, and October, 1990, when she was injured. The court has carefully considered whether in this case the failure of Debtor to inform Plaintiff of the loss of coverage, standing alone, constitutes "false pretenses" within the meaning of § 523(a)(2). Under § 523(a)(2)(A), "false pretenses" means implied misrepresentations or conduct intended to create and foster a false impression when the truth is known by the debtor. The evidence does not support such a finding in this case. Plaintiff testified that during the course of her employment she did not inquire about coverage and did not know whether there was coverage. In fact, there was no showing of any direct discussions or dealings of any kind between Plaintiff and Debtor regarding workers' compensation insurance.

The evidence strongly suggested that in the past it had been the practice of Adkins, Inc. to maintain workers' compensation coverage. It is not even clear from the evidence that Debtor was actually aware that the coverage had lapsed some time before Plaintiff's accident on October 4, 1990. Even if the inference is drawn that Debtor, as alter ego of Adkins, Inc., was aware that the coverage had lapsed or otherwise terminated, there was no showing of how long he had such knowledge before the accident. Debtor may have been negligent in permitting the coverage to lapse, but nothing indicates that he intentionally and knowingly created a false impression upon which Plaintiff relied. The facts in this case simply do not support a conclusion that the Debtor was guilty of fraud, false pretenses or a false representation.

## II. Willful and malicious conduct.

▆ Plaintiff also claims that her injuries resulted from Debtor's willful and malicious conduct and that her claim should be excepted from discharge under 11 U.S.C. § 523(a)(6).[3] There are two separate elements to a nondischargeability claim under this section. The term "willful" means a deliberate or intentional act which is certain or substantially certain to cause injury. *See e.g. In re Ketaner,* 149 B.R. 395, 400 (E.D.Va. 1992); *In re Britton,* 950 F.2d 602 (9th Cir. 1991); 3 *Collier on Bankruptcy* ¶ 523.16[1] at 523–129 (15th Ed.1994). In order to establish that a debtor's conduct was "malicious" within the meaning of § 523(a)(6), a plaintiff is not required to prove specific malice, spite, hatred, or ill-will. "Implied malice, which may be shown by the acts and conduct of the debtor in the context of the surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6)." *St. Paul Fire and Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1010 (4th

---

**3.** 11 U.S.C. § 523(a)(6) provides that a discharge "does not discharge an individual debtor from any debt—(6) for willful and malicious injury by the debtor to another entity of to the property of another entity."

Cir.1985). However, negligence, even gross negligence, is insufficient to satisfy the necessary elements of malice and willfulness. *In re Brubaker,* 57 B.R. 736, 739 (W.D.Va. 1986).

There is a substantial body of recent case law involving the status of uninsured workers' compensation claims under § 523(a)(6). In what appears to be the majority of cases, courts have found that such claims should be discharged. Many of these courts have reached this conclusion based on the rationale that the debtor's failure to obtain insurance is not the direct cause of the creditor's injury. *See e.g., In re Kemmerer,* 156 B.R. 806 (S.D.Ind.1993) ("Even if an employer's failure to provide Workers' Compensation insurance is willful, wrongful, and without just cause or excuse, it is not 'malicious' because harm to an employee is not substantially certain to follow"); and *In re Frias,* 153 B.R. 6 (D.R.I.1993) ("Failing to maintain insurance certainly created a risk that the employer might incur a personal financial liability, but that result was not so predestined that the Debtors' conduct may be deemed willful or malicious, as a matter of law"). In these cases, the court often emphasizes that failure to insure produces only the potential for harm because it is unlikely that an employee will suffer a compensable injury and, if he does, the employer may be able to pay the claim out of the operating funds of the business. *In re Scott,* 13 B.R. 25 (C.D.Ill.1981); *In re Zalowski,* 107 B.R. 431 (D.Mass.1989).

There is some support for the position that, since the *physical* injury to the employee did not result from the willful act of leaving employees uninsured, there is no willful and malicious injury. *See In re Hampel,* 110 B.R. 88 (M.D.Ga.1990). This approach relies on the plain language of 11 U.S.C. § 523(a)(6), which provides an exception for "willful and malicious injury by the debtor to another entity or to the property of another entity," and not a willful and malicious *act which causes an injury.* This narrow view of § 523(a)(6) has not been widely accepted because the intentional failure to provide workers' compensation coverage may be regarded as a willful injury to the employee's *statutory property right* to be protected in

the event of an injury on the job. *See, e.g., In re Mazander,* 130 B.R. 534 (E.D.Mo.1991); *In re Frias,* 153 B.R. 6 (D.R.I.1993); *In re Strauss,* 99 B.R. 396 (N.D.Ill.1989). In these cases, the analysis then shifts to an examination of whether such a willful omission was also malicious.

The cases that have excepted these workers' compensation debts from discharge frequently have found a willful and malicious injury resulting from some type of egregious conduct on the part of the debtor/employer which is related to the absence of workers' compensation insurance. For example, in *In re Verhelst,* 170 B.R. 657 (W.D.Ark.1993), an employer in an auto salvage business made express representations to a mechanic that he would provide coverage and then deliberately elected not to purchase coverage. The court found the debt to be nondischargeable. *Id.* The same result has been reached when employers withheld wages for the ostensible purpose of purchasing insurance and then did not secure coverage for employees who labored and were ultimately injured in the course of their employment. *In re Peel,* 166 B.R. 735 (W.D.Okla.1994); *In re Erickson,* 89 B.R. 850 (D.Idaho 1988).

▬▬ This court believes that in an appropriate case involving egregious conduct on the part of the debtor, a debt resulting from an intentional failure to comply with a statute requiring the debtor to maintain workers' compensation coverage may be nondischargeable under § 523(a)(6). Whether such a claim, in fact, is nondischargeable under this rule depends upon the particular facts of each case. Having carefully considered the facts of the present case, the court has concluded that the facts are insufficient to warrant a finding in this case that the plaintiff's claim is nondischargeable under § 523(a)(6).

▬▬ There was no showing of willful or egregious conduct on the part of Debtor in this case. The Debtor made no representations whatsoever regarding workers' compensation coverage at any time during the course of plaintiff's employment. He never made any assurance to Plaintiff or her husband that the corporation currently maintained coverage or would do so in the future.

The corporation did not withhold premium amounts from employees' paychecks and then fail to secure the coverage. Essentially all that was shown was that there was no coverage in effect on the date that Plaintiff was injured. There was no showing that this lapse was intentional or deliberate, rather than a negligent oversight nor was it shown when the lapse in coverage became known to the Debtor. In short, the evidence was insufficient to show either willfulness or malice on the part of the Debtor.[4]

The court also considered the nature of Plaintiff's employment and whether it warranted a finding of nondischargeability. Plaintiff's job involved some heavy construction and a certain degree of danger. Plaintiff's specific duties, however, were not so inherently dangerous that injuries were substantially certain to occur. The court considered the conduct of Debtor in the context of all of the surrounding facts and circumstances shown by the evidence, including the nature of the Plaintiff's employment. In light of the lack of any egregious conduct indicating willfulness or malice on the part of Debtor, the nature of plaintiff's employment is insufficient for the court to conclude that the plaintiff's claim should be treated as nondischargeable.

Since Plaintiff failed to establish by a preponderance of the evidence that the debt in question should be excepted from discharge under either § 523(a)(2)(A) or § 523(a)(6), judgment must be entered in favor of the Debtor. A judgment consistent with this opinion will be entered contemporaneously herewith.

---

**4.** Plaintiff argued that Debtor was not cooperative and forthcoming *after* the accident as grounds for finding willfulness and malice. While Mr. Adkins may have been unresponsive after the plaintiff was injured, such behavior *after* the accident is insufficient to establish that the failure to have coverage at the time of the accident should be treated as a willful and malicious injury to the plaintiff.