**In re Jerry Glenn PEEL, d/b/a Peel Manure Spreading, Debtor.**

**Terry Glenn HILLIARD, Plaintiff,**

**v.**

**Jerry Glenn PEEL, Defendant.**

**Bankruptcy No. BK–93–12233–BH.**
**Adv. No. 93–1261–BH.**

United States Bankruptcy Court,
W.D. Oklahoma.

April 28, 1994.

Gary C. Rhodes, Rhodes & Associates, Oklahoma City, OK, for plaintiff.

Charles Waswo, Underwood & Bardrick, Oklahoma City, OK, for debtor/defendant.

## MEMORANDUM OF DECISION

RICHARD L. BOHANON, Chief Judge.

The central issue in the trial of this complaint is whether a debt for uncompensated injuries resulting from the failure of debtor-defendant to maintain workers' compensation insurance may be excepted from his discharge.

The uncontested facts are that defendant was engaged in the business of gathering manure from cattle yards in the Oklahoma panhandle and spreading it on farms in the neighboring area. He operated the business as a sole-proprietorship and employed the plaintiff sometime in either 1985 or 1986. Plaintiff was injured in 1988 when, in the course of his employment, a piece of metal from one of defendant's machines accidentally flew into his eye causing its permanent loss. Defendant did not maintain workers' compensation insurance as required by the law of Oklahoma. *See* 85 O.S. § 11.

The Workers' Compensation Court then awarded plaintiff $33,334 as compensation for the loss of his eye and an additional $10,000 for future medical expenses. Over time defendant reduced the amount of the award and in 1992 a final judgment was entered in plaintiff's favor for the balance due, $17,500, with interest. Defendant then filed his bankruptcy petition seeking to discharge this balance as an unsecured claim. It also is undisputed that during the entire period of plaintiff's employment defendant withheld approximately 7% of his earnings, ostensibly for the purpose of purchasing workers' compensation insurance. This practice contravenes the provisions of 85 O.S. § 46 and is a criminal offense.

Certain other facts are disputed. Defendant contends that he previously had maintained insurance but it had lapsed at the time of the injury, which occurred on August 23, 1988 [1]. He, however, does not remember the name of the insurer and has no independent or objective evidence, such as canceled checks, policies of insurance, or testimony of disinterested witnesses to demonstrate the truth of this contention. He then maintains that through oversight the insurance lapsed shortly before the day of the injury; that he called the State Insurance Fund on August 16 to obtain insurance; that it sent him an application form to reissue the policy; that he received and returned it to the fund on August 20 with the required premium; and that the application form and check were inexplicably lost in the mail and did not reach the fund until August 26, 3 days after the accident. He thus maintains that he intended to provide insurance and but for difficulties with the mail it would have been in effect on the day of the accident. The credible evidence, however, belies these transparent fabrications. Plaintiff introduced into the record defendant's envelope mailed to the insurance fund which is postmarked August 24 and it is irrefutable that the papers were not received by the fund until August 26. Defendant's own statement on the application also states that his previous insurance was canceled or expired in 1985, not in August 1988.

Since the evidence is contradictory the credibility of the parties becomes an issue. This court has closely observed both of them while testifying and has taken into account their means of knowledge, strength of memory, the reasonableness and consistency of their testimony, their interest in the outcome and their conduct on the witness stand. Based on these factors I can only find that for at least 2 years defendant unlawfully withheld some 7% of plaintiff's wages saying it was being used to pay for workers' compensation insurance; intentionally misrepresented to the plaintiff that this was the purpose of the deduction; knowingly allowed plaintiff, and apparently others, to work in a hazardous occupation without insurance; after the accident mailed an application form and antedated check to the insurance fund; and now falsely claims that the delay was the fault of the postal service. With no evidence but his own self serving statements he would have the finder of fact believe that until shortly before the accident he had faithfully maintained insurance which was renewed by papers he placed in the mail on August 20 which were not postmarked until August 24. This testimony is not believable. There is a total lack of any independent proof of the prior insurance or that the postal service caused the papers to arrive at the fund after the accident. Rather than tending to show good faith and lack of malice, defendant's statements and concocted explanations prove

---

1. He also states that previously insurance had been provided by business associates or affiliates. However, not one scintilla of evidence is offered to prove that others had maintained the required insurance for defendant's benefit.

only his deceit and misrepresentation. On the other hand, plaintiff's demeanor and conduct on the witness stand were positive and his testimony is entirely credible.

The examination then turns to the legal significance of the stated facts. Plaintiff seeks to except his debt from defendant's discharge under sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code. The first requires that he prove defendant obtained money from him by false pretenses or false representation; the second requires that he show defendant was his fiduciary or there was embezzlement or larceny; and the third requires that he establish his injury resulted from defendant's willful and malicious conduct.

■ The facts plainly show that defendant made false representations to plaintiff—he falsely represented to him the amounts withheld from his wages were being used to purchase insurance. Such being the case money "obtained" from plaintiff is excepted from the discharge. There is no doubt concerning the meaning of the term and I must apply the plain language of the statute. *See e.g., In re ZRM–Oklahoma Partnership*, 156 B.R. 67 (Bankr.W.D.Okla.1993). *Collier on Bankruptcy*, ¶ 523.08[1] at 523–46 quotes authority saying that "... it should be made to appear that property of some kind, tangible or intangible, was thus obtained by [the defendant-debtor]. The mere fact that the liability arose in consequence of his fraud is not alone sufficient; the fraud must be followed and result in a loss of property to the creditor." Plainly the $17,500 liability arose only as a consequence of the false representations, for there would be no liability if the representations had been true and there had been insurance in force. But this sum is not money "obtained" from the plaintiff. What defendant did "obtain" from plaintiff is the sum unlawfully withheld from his wages. While the pretrial order is not explicit concerning whether this recovery of this amount is sought by the plaintiff it can be read to include it. The only proof of the amount of wages withheld, however, is for 5 months and shows that defendant obtained $251.43 as a

result of the false representations.[2] A non-dischargeable judgment for this amount will be entered in plaintiff's favor.

■ Next plaintiff seeks relief under section 523(a)(4) which provides that any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny is excepted from the discharge. Clearly, an employer normally is not a trustee for its employees and plaintiff makes no attempt to show that, either as a matter of fact or law, such is the case here. *Tway v. Tway (In re Tway)*, 161 B.R. 274 (Bankr.W.D.Okla.1993); *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir.1976) If the facts of the case support a finding of defalcation, embezzlement or larceny the debt arising from the theft would be only the amounts withheld from plaintiff's wages and he has already been awarded a judgment for this sum.

■ Plaintiff finally contends that he is entitled to relief under section 523(a)(6) which provides in pertinent part that "any debt—for willful and malicious injury by the debtor to another entity ..." is excepted from the discharge. This section is not limited to recovery for "money ... to the extent obtained" as is § 523(a)(2) but encompasses any debt. This is so because it "... relates to torts and not to contracts." *Collier on Bankruptcy*, ¶ 523.16 at 523–128. If the debt evidenced by the judgment falls within this exception it is not discharged. There is no doubt defendant's failure to obtain the required insurance was willful for he knew it was required and willfully elected to disregard his lawful obligation. *See Collier on Bankruptcy, supra.*

The only issue remaining is whether the conduct was malicious. It should be recalled at this point that not only did defendant fail to provide the insurance but he also unlawfully withheld what it would have cost from plaintiff's wages. His employees additionally were engaged in a business that is noticeably and inherently dangerous.

■ The seminal decision from the Court of Appeals on this issue is *C.I.T. Fi-*

---

**2.** The testimony plainly shows that withholdings were made for the entire period of plaintiff's employment, some 2 or 3 years, but the evidence of the amount is only as indicated in the text.

*nancial Services v. Posta,* 866 F.2d 364 (10th Cir.1989). There it analyzes the requirements for finding malice in a § 523(a)(6) proceeding saying "the focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, 'not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act.'" It continues saying "the malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *Id.* at 367.

I must, therefore, examine the defendant's conduct in light of these standards. First, what was his actual knowledge? It is clear that he knew of his obligation to provide compensatory insurance; that he knew that plaintiff was engaged in inherently dangerous activities on the job; that he knew he was withholding funds from plaintiff's wages to pay for the required insurance;[3] and that he knew plaintiff was uninsured. Clearly he had actual knowledge of his wrongful conduct.

Secondly, was it reasonably foreseeable that defendant's conduct viz, failing to provide the insurance, would result in injury to the plaintiff? Defendant, experienced in the particular business, well knew that an employee could be seriously injured and without insurance would not be compensated as required by the law of the state. This accident and the resulting injury were more than reasonably foreseeable—they were abundantly foreseeable.

Third, did defendant have knowledge of plaintiff's rights? This element has been discussed above and there is no question that defendant knew that plaintiff had a right to be protected by insurance. If nothing else defendant's conduct immediately following the accident demonstrates this knowledge.

Fourth, did defendant, possessing that knowledge, take action in violation of plaintiff's rights? The answer is an unequivocal yes for he intentionally did not purchase the

insurance knowing of plaintiff's right to be protected. This occurred even after the cost of insurance was unlawfully withheld from plaintiff's own wages.

Plaintiff also relies upon *Strauss v. Zielinski,* 99 B.R. 396 (D.N.D.Ill.1989) which reaches a conclusion of debtor liability on a similar set of facts. The primary distinction between that case and this one is that Strauss did not flagrantly deduct the cost of the insurance, which he did not purchase, from his employee's wages. As the *Strauss* court says, "a debtor may act 'maliciously' if it was foreseeable that an employee would be injured and that failure to obtain workman's compensation would injure the employee's statutory right to insurance benefits. This is particularly true in the instant case ... in light of the hazardous business of the appellant." *Id.* at 400. This decision squares with this case and both are in accord with the conclusions of the Court of Appeals in *Posta.*

Defendant relies on *Holt v. France,* 138 B.R. 968 (D.D.Colo.1992). That decision, however, is not based upon analogous facts. There the debtor-defendant was not engaged in hazardous business, was under a good faith "mistaken assumption" that he had insurance if force, and failed to pay the premiums for reasons that were "more careless than volitional." The facts found by the court showed that the debtor-defendant "did not know that he did not have coverage." *Id.* at 971. Here, the contrary has been found to be the fact. Peel knew he did not have insurance; and that he had taken plaintiff's money to pay for it. The *Holt* court distinguishes the decision in *Strauss* on the same grounds that the facts of this case are distinguishable from *Holt.*

The conclusion that plaintiff's injury was caused by defendant's wilful and malicious conduct is inescapable.

Judgment will be entered for plaintiff excepting the debt from defendant's discharge.

---

**3.** It is unclear whether he actually knew that the wage deductions constituted a crime, but this fact is not relevant to the inquiry.