**In re Matthew P. LEAHY and Susan B. Leahy d/b/a Matthew Leahy Designer/Builder, Debtors.**

**John F. COLLORA, Jr., and Gilbert Law Offices, P.A., Plaintiffs,**

v.

**Matthew P. LEAHY, Defendant.**

Bankruptcy No. 92–10842.
Adv. No. 93–1097.

United States Bankruptcy Court, D. Maine.

July 19, 1994.

Robert S. Lingley, Russell, Lingley & Silver, Bangor, ME, for defendant.

Charles E. Gilbert III, Bangor, ME, for plaintiffs.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Plaintiffs' complaint, brought pursuant to § 523(a)(3)(A) and § 523(a)(3)(B) seeks a determination that Matthew P. Leahy's ("Leahy") obligations established by State of Maine's Workers' Compensation Board de-

crees survive his Chapter 7 discharge. The parties have submitted the case for decision on a stipulated record. For the reasons set forth below, I conclude that the obligations at issue do not endure.[1]

### History

### 1. Bankruptcy Proceedings [2]

Matthew P. Leahy and Susan B. Leahy voluntarily filed for Chapter 7 relief on November 17, 1992. John F. Collora, Jr., ("Collora"), one of Leahy's former employees, was not listed as a creditor.

On November 20, 1992, the clerk issued the § 341 meeting notice. In accordance with Fed.R.Bankr.P. 2002(e), the notice advised creditors that, because it appeared that no assets were available for distribution, proofs of claim need not be filed. Consistent with Fed.R.Bankr.P. 4004(a) and 4007(b), February 12, 1993, was set as the last date for filing complaints objecting to the debtors' discharge or to the dischargeability of any obligation.

Immediately after the meeting of creditors, the trustee filed his "no distribution" report. The discharge order issued on February 18, 1993. On March 26, 1993, the case was closed.

On September 15, 1993, Matthew Leahy moved to reopen the case in order to amend his schedules by adding Collora's claims. By order dated October 13, 1993, the case was reopened. Thereafter, Collora's claims were added to Leahy's schedules. Collora and Gilbert Law Offices, P.A. ("Gilbert"), then filed their dischargeability complaint, asserting that their claims resulted from Leahy's willful and malicious actions. They also argue that Leahy "knowingly and intentionally" omitted them from his bankruptcy schedules and, therefore, may not be discharged of their claims. Gilbert argues further that a substantial share of Leahy's obligation arose

post-petition and, therefore, too late to have been discharged.

### 2. The State Law Claims

The parties' factual stipulation provides, in full, as follows:

1. On February 1, 1991, John F. Collora, Jr., was an employee of Matthew P. Leahy.

2. On February 1, 1991, John F. Collora, Jr., suffered a work related injury.

3. As a result of his work related injury, John F. Collora, Jr., incurred the following financial loss:

A. Loss of wages for the period of February 1 through February 8, 1991;

B. Medical expenses in the amount of $2,372.45;

C. Legal Fees incurred in pursuing his worker's compensation claim in the amount of $1,476.76.

4. Matthew P. Leahy paid John F. Collora, Jr., all but one week of his lost wages but has failed to reimburse him for either his medical expenses or his attorney's fees.

5. At all times relevant hereto Matthew P. Leahy did not carry workers' compensation insurance to pay John F. Collora, Jr., his financial loss resulting from the work related injury.

6. On June 17, 1992, John F. Collora, Jr., filed a petition with the Workers' Compensation Commission for award of compensation for lost wages and a petition to fix the amount to be allowed as medical expenses.

6. [sic] Although properly notified, Matthew P. Leahy failed to file in a timely manner a notice of controversy or other objection to John F. Collora, Jr.'s petition for award or claim for medical expenses.

7. On September 8, 1993, the Workers' Compensation Board entered a decree that

---

**1.** The facts are not in dispute. This memorandum sets forth conclusions of law, including those underlying this court's previously announced disposition of fewer than all claims. *See* Fed.R.Bankr.P. 7052, 7054(a); Fed.R.Civ.P. 54(b).

All references to statutory sections, to the "Bankruptcy Code" or to the "Code" are, unless

otherwise noted, to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

**2.** The procedural history of the Leahy bankruptcy, including the timing and content of notices and orders, is drawn from this court's own records, of which it takes judicial notice pursuant to Fed.R.Evid. 201.

John F. Collora, Jr., was entitled to payment from Matthew P. Leahy for his lost wages from February 1, 1991, to February 8, 1991, and payment of medical bills in the amount of $2,372.45, a copy of that decree is attached as Exhibit "A".

8. On August 16, 1993, Charles E. Gilbert, III, Esq., attorney for Matthew P. Leahy [sic] filed a motion for award of fees and disbursements (Exhibit "B"), and on September 3, 1993 the Worker's Compensation Board ordered Matthew P. Leahy to pay John F. Collora, Jr., the sum of $1,476.76 (Exhibit "C").

9. On November 17, 1992, Matthew P. Leahy filed a petition under Chapter 7, of Title 11 of the U.S. Bankruptcy Code. Parties Joint Stipulation of Fact.[3]

## Discussion

### 1. *Preliminary Issues*

#### a. *Issues Not Reached*

Because the obligations in question are not excepted from discharge, it is unnecessary to address questions relating to the commission's decrees' validity or Gilbert's standing as a party plaintiff.[4] However, for simplicity's sake, the balance of this memorandum will refer to Collora as the sole plaintiff in this action.

#### b. *Timing and § 523(a)(3)(B)*

Collora, whose claims were added to Leahy's schedules only after the case was reopened, had no notice or knowledge of Leahy's Chapter 7 filing to enable him to file a dischargeability complaint in advance of the February 12, 1993, bar date. Pursuant to § 523(a)(3)(B), he is relieved from the temporal limits set by § 523(c)(1) and Fed. R.Bankr.P. 4007(c) for filing a § 523(a)(6) dischargeability complaint. *See In re McKinnon*, 165 B.R. 55, 56–57 n. 7 (Bankr. D.Me.1994); *Hiersche v. Brassard (In re Brassard)*, 162 B.R. 375 (Bankr.D.Me.1994).

#### c. *Burden of Proof*

■ Evaluating Collora's claims begins with a view to the burden of proof. Collora bears the burden of proving, by a preponderance of the evidence, facts sufficient to support application of § 523(a)(6).[5] *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Reynolds–Marshall v. Hallum*, 162 B.R. 51, 55 (D.Me.1993).

### 2. *The § 523(a)(6) Claim*

#### a. *The Big Picture*

■ Collora's principal argument is categorical. He bases it on what he characterizes as the important state policies reflected in Maine's workers' compensation laws. He points to the fact that, at the time he was injured, state statutes required employers such as Leahy to provide for payment of their employees' workers' compensation claims through insurance or an approved self-insurance program. 39 M.R.S.A. § 23 (repealed by 39–A M.R.S.A. § 403, effective Jan. 1, 1993). An employer's failure to do so potentially could result in, among other things, loss of statutory tort immunity, 39 M.R.S.A. § 4 (repealed by 39–A M.R.S.A. § 104, effective Jan. 1, 1993), and criminal liability. 39 M.R.S.A. § 104–A(2–B) (repealed by 39–A M.R.S.A. § 324, effective Jan. 1, 1993). Collora's argument continues: "Certainly, Leahy makes no claim here that he didn't know he was required to have compensation insurance. For whatever rea-

---

**3.** Stipulation Exhibits A, B and C add no facts beyond those set forth in the parties' stipulation. They verify the dates and amounts of the awards referred to in the stipulation.

**4.** Although Collora initiated proceedings for workers' compensation benefits before Leahy filed his Chapter 7 petition, he continued to prosecute them, and decrees were ultimately entered, after Leahy's bankruptcy. Thus, the Commission's awards are arguably void. *See Interstate Commerce Commission v. Holmes Transportation, Inc.*, 931 F.2d 984, 987 (1st Cir.1991).

In addition, the parties' stipulation, as well as the commission's decree, establish that Leahy was adjudged liable to Collora for Collora's reasonable attorneys' fees. Stipulation at ¶ 3C; Exhibit C to Stipulation. The record discloses no assignment giving Gilbert rights to collect the fees from Leahy.

**5.** Section 523(a)(6) provides that the Chapter 7 discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

son, and that reason is irrelevant from Plaintiff's point of view, Leahy chose to ignore Collora's right to that protection." Plaintiff's Memorandum of Law, Court Doc. No. 7, at 4. Thus, he concludes summarily that Leahy's unpaid workers' compensation obligations should be excepted from discharge under § 523(a)(6) because it "hardly seems wise or fair policy to reward the debtor for playing Russian roulette with the lives of workers." Plaintiff's Memorandum of Law, Court Doc. No. 6, at 6.[6]

A number of courts have considered the dischargeability of debtor/employers' unpaid (*i.e.* uninsured) obligations to injured former employees under § 523(a)(6). Most decisions hold such obligations dischargeable. *See Szewczyk v. Wojtaszek (In re Wojtaszek)*, 164 B.R. 604 (N.D.Ill.1994); *Holt v. France (In re France)*, 138 B.R. 968 (D.Colo.1992); *Tiberi v. Annan (In re Annan)*, 161 B.R. 872 (Bankr.D.R.I.1993); *Morton v. Kemmerer (In re Kemmerer)*, 156 B.R. 806 (Bankr. S.D.Ind.1993); *Silva v. Frias (In re Frias)*, 153 B.R. 6 (Bankr.D.R.I.1993); *Peek v. Mazander (In re Mazander)*, 130 B.R. 534 (Bankr.E.D.Mo.1991); *Eaves v. Hampel (In re Hampel)*, 110 B.R. 88 (Bankr.N.D.Ga. 1990); *Worker's Compensation Trust Fund v. Collins (In re Collins)*, 109 B.R. 541 (Bankr.D.Mass.1989); *Denehy v. Zalowski (In re Zalowski)*, 107 B.R. 431 (Bankr. D.Mass.1989); *In re Eberhardt*, 92 B.R. 773 (Bankr.E.D.Tenn.1988); *Robert v. Maier (In re Maier)*, 38 B.R. 231 (Bankr.D.Minn.1984); *Hamilton v. Brower (In re Brower)*, 24 B.R. 246 (Bankr.D.N.M.1982); *Aldridge v. Scott (In re Scott)*, 13 B.R. 25 (Bankr.C.D.Ill.1981). A few have held that § 523(a)(6) may operate to except them from discharge. *See Hilliard v. Peel (In re Peel)*, 166 B.R. 735 (Bankr. W.D.Okl.1994); *Hester v. Saturday, (In re Saturday)*, 138 B.R. 132 (Bankr.S.D.Ga. 1991); *Vig v. Erickson (In re Erickson)*, 89 B.R. 850 (Bankr.D.Id.1988); *Zielinski v. Strauss (In re Strauss)*, 86 B.R. 559 (Bankr. N.D.Ill.1988), *aff'd*, 99 B.R. 396 (N.D.Ill.

1989); *Juliano v. Holmes (In re Holmes)*, 53 B.R. 268 (W.D.Pa.1985).

Several of the minority decisions might be read so broadly as to place virtually all uncompensated workers' compensation claims, incurred and unpaid in violation of state law, within § 523(a)(6)'s reach. *See, e.g., In re Strauss*, 99 B.R. at 400 ("a debtor possesses 'knowledge' sufficient for finding 'malice' when said debtor knows beforehand that if a workman's compensation claim does arise his or her actions preclude an injured employee from receiving compensation"); *In re Holmes*, 53 B.R. at 270 (failure to have coverage in place was an act "done with the intention of injuring anyone who was in this plaintiff's position who would suffer loss thereby and as this result is foreseeable, it was malicious").

■ But it is inappropriate to read § 523(a)(6) so broadly. *See Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir.1994) (discharge exceptions are to be construed narrowly). Unlike some other exceptions to discharge, § 523(a)(6)'s application is circumstance specific, not categorical. *Cf.* § 523(a)(1) (certain tax obligations); § 523(a)(5) (alimony, support and maintenance); § 523(a)(8) (student loans); § 523(a)(9) (death and personal injury claims arising from driving while intoxicated).

If Congress had intended to create an across-the-board discharge exception for unpaid workers' compensation claims, it would have done so. *In re Mazander*, 130 B.R. at 536–37.

### b. *The Little Picture*

■ The foregoing notwithstanding, "It is *possible* that upon examination of the circumstances, a court may determine that the failure to provide such insurance in a particular case was a willful and malicious injury." *In*

---

**6.** The argument contains a substantial, unbridged logical leap. The circumstances that caused his physical injury are not germane: Collora does not contend that Leahy willfully and maliciously injured him bodily. It is, within the context of § 523(a)(6), characterization of Le-

ahy's failure to insure against the possibility of employee injury that is at issue. The distinction is important. It is one reason why obligations such as the one at bar fail to fit neatly within § 523(a)(6)'s contours. *See infra* n. 7.

*re Mazander,* 130 B.R. at 536–37 (emphasis added).[7]

■ "Willfulness" and "malice" are separate elements of § 523(a)(6)'s discharge exception. *Barclays American/Business Credit v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985) (the two elements must not be "lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable"). Only if each element is proved is the exception applicable. *See generally* 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 523.16, at 523–130 (15th ed. 1992).

■ Section 523(a)(6)'s "willfulness" element has been defined in the following terms:

"Willful" has been defined as "deliberate or intentional." *Night Kitchen Music v. Pineau,* 141 B.R. 522, 526 (Bankr.D.Me. 1992) (surveying cases from various circuit courts of appeal that have adopted the "deliberate or intentional" standard), *rev'd on other grounds, sub nom. In re Pineau,* 149 B.R. 239 (Bankr.[sic] D.Me.1993). The intent required is the "intent to do the act at issue, not intent to injure the victim."

*In re Britton,* 950 F.2d 602, 605 (9th Cir. 1991) (citing *In re Posta,* 866 F.2d 364, 367 (10th cir.1989) ("The 'willful' element … simply addresses whether the debtor intentionally performed the basic act complained of," as opposed to having engaged in unintentional or accidental conduct.))

*Reynolds–Marshall v. Hallum,* 162 B.R. 51, 55 (D.Me.1993).

■ The exception's "malice" element requires that the plaintiff prove injury from a wrongful act, done without just cause or excuse. *Id.; In re Pineau,* 149 B.R. at 243. *See In re Nance,* 556 F.2d 602, 611 (1st Cir.1977) (Act case). "[E]stablishing malice requires an additional showing such as demonstrating that the acts complained of were targeted at the creditor such that the acts were certain or almost certain to inflict financial or other harm." *Reynolds–Marshall v. Hallum,* 162 B.R. at 55 (quoting *In re Long,* 774 F.2d at 881). *See In re Littleton,* 942 F.2d 551, 555 (9th Cir.1991); *In re Kemmerer,* 156 B.R. at 809. Reckless disregard of the creditor's rights is not enough. *Reynolds–Marshall v. Hallum,* 162 B.R. at 55.[8]

7. The possibility of such a discharge exception in a given case does present difficult questions relating to, among other things, proximate cause, *In re Hampel,* 110 B.R. at 93); willfulness, *In re France,* 138 B.R. at 968 (D.Colo.1992); malice (substantial certainty of injury), *In re Kemmerer,* 156 B.R. at 806; and the interest(s) injured, *In re Zalowski,* 107 B.R. at 434. The factual record in this case presents no need to resolve such issues.

To the extent that generalization holds analytic utility, unfunded workers' compensation debt discharge cases display significant attributes similar to those addressing § 523(a)(6) dischargeability of uninsured drivers' liabilities in instances where liability insurance is mandatory. *See In re Kemmerer,* 156 B.R. at 809 (noting parallels and citing cases). Absent a particularized showing of willfulness and malice, most of those decisions determine such obligations to be dischargeable. *Id. See, e.g., In re Pechar,* 98 B.R. 488 (D.Neb.1988); *In re Fate,* 100 B.R. 141 (Bankr. D.Mass.1989).

8. At the risk of saying too much where the point is not at issue, but lest the reader take the foregoing discussion as a signal that *Long's* malice formulation is the settled standard in this district, I will briefly digress.

In *Pineau,* while recognizing that the malice element may be satisfied by proving either "spe-

cial malice," 141 B.R. at 529 n. 34, or "implied malice," 141 B.R. at 528–29, I declined to adopt *In re Long's* malice analysis *in toto.* I took issue with *Long's* "targeted at the creditor" component and commented that when, in light of the circumstances extant at the time of the act, a finding of implied malice is warranted, the debtor should not be heard to "disclaim an intention to harm the creditor by explaining, for example, that his or her conduct was aimed to keep a troubled business afloat, rather than to deprive a specific creditor of property or collateral." 141 B.R. at 529 (citation deleted). *See generally,* Tabb, *The Scope of the Fresh Start in Bankruptcy: Collateral conversions and the Dischargeability Debate,* 59 Geo.Wash.L.Rev. 56 (1990). Employing the *Long* model, other courts have permitted the debtor to defend against a charge of implied malice in that fashion. *See, e.g., First National Bank of Fayetteville v. Phillips (In re Phillips),* 882 F.2d 302, 305 (8th Cir.1989) (willful misappropriation of funds not "malicious" because debtors believed misappropriation would enable them to stay in business, eventually to repay creditor and, therefore, act was not "targeted" at creditor.)

In *Pineau* I determined that, in light of circumstances existing when Pineau infringed the plaintiff's copyrights (including the plaintiff's willingness to negotiate reinstatement of Pineau's copyright license), implied malice had not been

Neither willfulness nor malice is demonstrated by this record. Collora's argument to the contrary, the stipulation does not indicate whether Leahy ever knew that he was uninsured. He has not established that Leahy deliberately or intentionally conducted business without required insurance. *Cf. In re Peel*, 166 B.R. at 739 (debtor had been without workers' compensation coverage for three years and wrongfully withheld "premiums" from plaintiff's wages); *In re Strauss*, 99 B.R. 396, 400 (N.D.Ill.1989) (debtor knew beforehand that if a workers' compensation claim arose his actions precluded the injured employee from receiving compensation); *In re Erickson*, 89 B.R. at 850 (debtor discontinued paying workers' compensation insurance premiums prior to plaintiff's injury and withheld pay for medical expenses); *In re Holmes*, 53 B.R. at 270 (debtor knew he did not carry workers' compensation coverage so advised plaintiff to file fraudulent claim against liability insurer).

Nor has Collora shown that Leahy acted in a manner "certain or almost certain" to cause him harm. *Cf. In re Peel*, 166 B.R. at 739 (finding of malice based on knowledge of wrongfulness; inherently dangerous activities involved); *In re Erickson*, 89 B.R. at 850 (malicious injury to employees' intangible property rights, following analysis in *Holmes* ); *In re Strauss*, 86 B.R. at 400 (malice found because debtor knew failure to obtain insurance coverage would injure employees' rights to insurance benefits); *In re Holmes*, 53 B.R. at 270 (act done with the intention of depriving injured employees of coverage for compensable injuries).

Collora has not brought Leahy's workers' compensation obligations to him within § 523(a)(6)'s ambit. Moreover, a Maine employee's right to workers' compensation benefits, including the right to an attorneys' fees award under the law then in effect, arises at the time of the compensable injury. *See Clark v. Rust Engineering*, 595 A.2d 416, 419 (Me.1991); *Reggep v. Lunder Shoe Products, Co.*, 241 A.2d 802, 804 (Me.1968).[9]

Thus, the scope of Leahy's discharge comprehends all of his obligations to Collora under the Maine's workers' compensation statutes, including the attorney's fee award for work Gilbert performed both before and after the petition was filed. *Grynberg v. Danzig Claimants (In re Grynberg)*, 143 B.R. 574, 577 (D.Colo.1990); *In re Jensen*, 113 B.R. 51 (Bankr.D.Utah 1990).

### 3. § 523(a)(3)(A)

■ As an independent ground of nondischargeability, Collora alleges, "Debtor knowingly and intentionally omitted creditors from his original bankruptcy schedules and [the obligation] is thus nondischargeable under 11 U.S.C. § 523(a)(3)." Apparently, he seeks to establish that the debt is not discharged by virtue of Leahy's wrongful failure

---

proved. Reversing, the district court criticized my critique and cited *Long* with approval. 149 B.R. at 243. However, reversal was not rooted in those aspects of *Long* I rejected. (It could not have been because, although finding the debt dischargeable, this court considered the debtor's conduct under a rule less forgiving than *Long*'s.) Rather, the district court disagreed with this court's finding that the debtor acted with "just cause or excuse." 149 B.R. at 243-44.

A second district court opinion, *Reynolds–Marshall v. Hallum*, also cites *Long* with approval. 162 B.R. at 55. That case cites *Long* for a general proposition, without addressing that portion of its formulation that I criticized in *Pineau*.

Thus, the extent to which a debtor may effectively defend a § 523(a)(6) complaint by asserting subjective good faith in the face of circumstances otherwise warranting a finding of implied malice remains unresolved. *See Pineau*, 141 B.R. at 529. This court remains of the view that the doctrine of implied malice under § 523(a)(6) operates straightforwardly and fairly

without incorporating a subjective "targeting the creditor" requirement so long as:

> [T]he facts, including the debtor's experience in similar situations or transactions, his attempts at concealing significant information from the creditor, his knowledge or understanding of his relative rights and obligations vis a vis the creditor, and his course of dealing with the creditor demonstrate that the debtor acted deliberately and intentionally, in knowing disregard of the creditor's rights, without cause or excuse.

*In re Pineau*, 141 B.R. at 530 (citing cases).

**9.** The statute under which the state commission entered its fees award, 39 M.R.S.A. § 110(2) (repealed by 39–A M.R.S.A. § 325, eff. January 1, 1993) provided: "Injuries on or after the effective date of the section. If an employee prevails in any proceeding involving a controversy under this Act, the commission or a commissioner may assess the employer costs of a reasonable attorney's fee and witness fees...." (Emphasis in original.)

to schedule it. There are cases that would support that contention. *See, e.g., Stark v. St. Mary's Hospital (In re Stark),* 717 F.2d 322 (7th Cir.1983).

Collora proffers nothing to support these allegations. In any event, this court has previously rejected *Stark's* rule:

> The long and the short of it is this: Section 727 provides for the discharge of prepetition obligations (scheduled or not), and references the exceptions to discharge listed in § 523(a). Among § 523(a)'s exceptions, only § 523(a)(3)(A), which addresses debts other than those specified in § 523(a)(2) (fraud), (4) (fiduciary defalcation), and (6) (willful and malicious injury), excepts from discharge debts that are not scheduled in time to permit the timely filing of a proof of claim (unless the creditor had notice or actual knowledge of the case). In a no-asset Chapter 7 case in which the Rule 2002(e) notice has issued, no time limit for filing proofs of claim is ever established. Thus, late scheduling of the debt does not prevent timely filing of a proof of claim and, accordingly, the debt is not excepted from discharge under § 523(a)(3)(A).

*In re McKinnon,* 165 B.R. at 56–57 n. 7. In such circumstances, the debtor's alleged motive for failing to schedule the creditor the first time around is of no consequence. *See In re Beezley,* 994 F.2d 1433, 1439–40 (9th Cir.1993) (O'Scannlain, J., concurring). Section 523(a)(3)(A) provides no independent basis for nondischargeability.

### Conclusion

For the reasons set forth above, all of the debtor's obligations to the plaintiff are discharged. Final judgment for the debtor shall issue forthwith.