In re James Louis KNAPP, Debtor.

John RIDDLE & Thomas
C. Rich, Plaintiffs,

v.

James Louis KNAPP, Defendant.

Bankruptcy No. 94–30813.
Adv. No. 94–3114.

United States Bankruptcy Court,
S.D. Illinois.

March 17, 1995.

Eric M. Rhein and Thomas Rich, Fairview Hgts., IL, for plaintiffs.

Terry Sharp and Marcus Herbert, Mt. Vernon, IL, for defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

John Riddle (Riddle) and his workers' compensation attorney, Thomas C. Rich (Rich), have filed a two-count amended complaint against debtor, James Louis Knapp (Knapp or defendant), seeking a determination that Knapp's obligation to pay Riddle's workers' compensation award, and certain attorney fees related to that award, is nondischargeable in Knapp's chapter 7 bankruptcy case as arising from a willful and malicious injury to property. Defendant moves to dismiss the complaint.

Count I of the complaint is brought by plaintiff Riddle pursuant to § 523(a)(6) of the Bankruptcy Code which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In Count I, Riddle alleges that prior to bankruptcy, he was an employee of Knapp, working at a lumber company owned and operated by Knapp, and assigned to the extra-hazardous duty of operating a power saw to cut wood.[1] Riddle was injured in the course and scope of his employment when his left arm was severed by the power saw. Riddle alleges that at the time of this injury, defendant was in willful violation of Illinois law requiring him to either maintain workers' compensation insurance coverage for his employees or to be adequately self-insured.

Riddle further alleges that Knapp, by failing to insure his employees, injured Riddle's property interest and statutory right to receive compensation for his arm injury. Furthermore, Riddle alleges, this injury was willful and malicious in that Knapp knowingly and intentionally failed to insure his employees and exposed them to financial harm in the face of foreseeable physical risk on the job site. Riddle contends that he has obtained an award in a proceeding before the Illinois Industrial Commission of $10,773 for temporary total disability and an award of $41,879.37 for unpaid medical bills and statutory interest and that he is entitled under Illinois law to an attorney fee award of $10,-530.47, representing twenty percent of these benefits totalling $52,652.37 which remain unpaid.[2] As a result, in Count I, Riddle seeks a determination that all amounts due him under the Illinois workers' compensation statute (including attorney fees) are nondischargeable in Knapp's bankruptcy case.

Count II of the complaint is brought by attorney Rich alone. In Count II, Rich repeats all of the allegations of Count I and seeks a determination that defendant's obligation to pay Rich's attorney fees arising out of Riddle's worker's compensation case is nondischargeable in bankruptcy.[3]

Defendant raises a two-fold argument as to Count I of the amended complaint. He argues first that the count fails to state a claim upon which relief can be granted and should be dismissed because Riddle has not pled facts which show that defendant acted with malice. According to defendant, Riddle must prove malicious intent by pleading that defendant acted with, at the very least, substantial certainty that his conduct would injure plaintiff. Since, by defendant's reasoning, Riddle was not damaged by the failure to insure, but rather by an intervening physical injury which was not substantially certain to occur, defendant cannot be said to have committed a malicious injury. Next, defen-

---

1. In Count I, Riddle alleges that the Industrial Commission of Illinois, in a worker's compensation proceeding brought by him against Knapp, held Riddle's duties at the lumber company— cutting wood with a power saw—to be an extra-hazardous activity.

2. Riddle fails to set forth in Count I the section of the Illinois workers compensation statute which entitles him to an award of attorney fees.

3. Again, the statutory authority for an award of attorney fees is absent.

dant argues that Riddle's prayer for attorney fees in Count I should be stricken. In this regard, defendant contends that the workers compensation statute giving rise to Riddle's claim for attorney fees requires a showing that defendant have an ability to pay the workers compensation award, yet refuse to pay it. Here, according to defendant, this showing has not been made. Moreover, defendant argues, since Riddle does not have a state court judgment awarding him attorney fees, the Bankruptcy Court cannot make a determination that the attorney fees are non-dischargeable.[4]

As to Count II, attorney Rich's claim that the attorney fees of $10,530.47 described above are nondischargeable in the bankruptcy case, defendant repeats the arguments he made with respect to the attorney fees sought by Riddle in Count I. He also contends that dismissal of Count II is warranted because Rich lacks standing to bring this claim since any judgment for attorney fees will be entered in favor of Riddle rather than in favor of his attorney.

■ The Court turns first to the question of whether Count I states a claim upon which relief can be granted. The standard to be used by the Court in determining the sufficiency of a complaint is firmly established. All well pleaded facts in the complaint must be taken as true, *e.g., Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990), and all reasonable inferences must be drawn in favor of the plaintiff. *E.g., Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). Additionally, "[t]he purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Thus, a motion to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief." *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d at 586.

Here, defendant contends that Count I is inadequate because Riddle has failed to sufficiently plead the element of malice which is necessary to state a cause of action under 11 U.S.C. § 523(a)(6). Defendant urges the Court to adopt a definition of "malice" which requires a showing that defendant acted with, at a bare minimum, substantial certainty that his conduct would injure plaintiff.

The Courts of Appeal have long grappled with the meaning of the terms "willful" and "malicious" within the context of § 523(a)(6) of the Bankruptcy Code. Much of the struggle has centered on the degree to which an intent to harm or the inevitability of harm is a component of one or both words. *See, e.g., Mills v. Ellerbee (In re Ellerbee),* 177 B.R. 731, 738 (Bankr.N.D.Ga.1995). The Seventh Circuit has recently defined the terms "willful" and "malicious" as used in § 523(a)(6). In *Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994), the Court of Appeals stated:

> We give effect to the words of the statute by viewing their plain meaning. 'Under § 523(a)(6), of the Bankruptcy Code, willful means deliberate or intentional ... [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.'

*Id.* (quoting *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986) (citations omitted)). In adopting this definition of "malice," the Court rejected a more onerous standard requiring a showing of specific intent to do harm. *See Staggs v. Forrester (In re Staggs),* 177 B.R. 92, 95–96 (N.D.Ind.1995). Under the more liberal construction announced in *Thirtyacre,* malice may be implied. Thus, a plaintiff "need not show that the defendant acted with specific ill will or evil motive, or that the act was specifically intended to cause unlawful consequences. Rather, the plaintiff need only show that the defendant acted intentionally and without just cause." *Custom Coffee Serv., Inc. v. Raguso (In re Raguso),* Nos. 94 A 01072, 94

---

**4.** The Court takes judicial notice of the fact that plaintiffs have filed a motion in defendant's bankruptcy case seeking relief from the automatic stay in order to continue the prosecution of the workers' compensation case in state court, including the prosecution of the claim for attorney fees and a claim for permanent partial disability.

B 10184, 1994 WL 744333, at *4 (Bankr. N.D.Ill. Dec. 21, 1994).

Defendant, however, urges on this Court a definition of "malice" which includes a requirement that harm be inevitable or, at least, substantially certain to occur, as a result of defendant's act. In *Matter of Scarlata*, 979 F.2d 521 (7th Cir.1992), the Seventh Circuit let stand decisions of the bankruptcy and district courts holding that a debtor did not act maliciously because his conduct would not "automatically or necessarily" cause injury to the plaintiff. *Id.* at 526–28. However, the Court of Appeals refused to define "malice" in *Scarlata*, terming it "a difficult question of first impression" and finding that the issue was not squarely before it. *Id.* The Court of Appeals gave like treatment to the issue of whether "malice" requires the sort of actions that would "automatically or necessarily" harm the creditor, reasoning that the appellant had not properly identified and presented as error the district court's application of this standard. *Id.* The *Scarlata* dissent advocated a construction of "malicious injury" as "an injury inflicted in knowing violation or disregard of the rights of another, done without just cause or excuse, when the actor knew **or should have foreseen** that the injury could occur." *Id.* at 539 (Coffey, J., dissenting) (emphasis added). Subsequently, the Seventh Circuit decided *Matter of Thirtyacre*, 36 F.3d 697, adopting a liberal definition of "malice" without expressly determining whether "malice" requires that the act "automatically or necessarily" cause injury.

■ Here, plaintiff has alleged that the injury was foreseeable. Additionally, he has alleged that his duties at the lumber company were extra-hazardous—a description which appears to elevate the likelihood of injury above mere foreseeability. In light of the Seventh Circuit's acceptance of an implied malice standard in *Thirtyacre*, and in the absence of a clear pronouncement from

the Court of Appeals that a "malicious" act must inevitably or necessarily lead to injury, the Court finds that plaintiff has stated a claim for relief under 11 U.S.C. § 523(a)(6).

Moreover, it is clear that the application of § 523(a)(6) should be circumstance specific rather than categorical. *E.g., In re Leahy*, 170 B.R. 10, 14–15 (Bankr.D.Me.1994). " '[U]pon examination of the circumstances, a court may determine that the failure to provide ... insurance **in a particular case** was a willful and malicious injury.' " *Id.* (quoting *In re Mazander*, 130 B.R. 534, 536–37 (Bankr.E.D.Mo.1991) (emphasis added)). *See also Matter of Bailey*, 171 B.R. 703, 706 n. 3 (Bankr.N.D.Ga.1994) ("facts may exist **in some cases** to find that an employer's failure to procure insurance creates a willful and malicious injury") (emphasis added). In other words, "[w]hether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact." *Matter of Thirtyacre*, 36 F.3d at 700. Dismissal of Count I without a factual determination is inappropriate.

The Court turns now to the issue of attorney fees. In Count I, Riddle seeks a determination that attorney fees of $10,530.47, to which he claims entitlement as a penalty under Illinois' workers' compensation law, are nondischargeable. In Count II, attorney Rich makes the same claim of nondischargeability for these attorney fees on his own behalf. Since the Court can readily dispose of Rich's cause of action under Count II, it will address Count II first.

It appears that both Riddle and Rich rely on 820 ILCS 305/19(g) in seeking an award of attorney fees.[5] This section of Illinois' Workers' Compensation Act, 820 ILCS 305/1 *et seq.*, provides, in pertinent part:

Except in the case of a claim against the State of Illinois, either party may present a certified copy of the award of the Arbitrator, or a certified copy of the decision of

---

**5.** As noted earlier, no statutory citation is supplied in the first amended complaint. In their original complaint, plaintiffs cite Ill.Rev.Stat. ch. 48, para. 138.19(g), now codified as 820 ILCS 305/19(g), as the statutory basis for the award of attorney fees. However, the Court questions Riddle's and Rich's assertion that the statute

mandates, as a penalty for non-payment of the workers' compensation benefits, an attorney fee award of **twenty percent** of the unpaid benefits. Both 820 ILCS 305/19(g) and Ill.Rev.Stat. ch. 48, para. 138.19(g) (1991), whose texts are identical, speak of taxing the **reasonable costs and attorney fees** as a penalty for non-payment.

the Commission when the same has become final, when no proceedings for review are pending, providing for the payment of compensation according to this Act, to the Circuit Court of the county in which such accident occurred or either of the parties are residents, whereupon the court shall enter a judgment in accordance therewith. **In a case where the employer refuses to pay compensation according to such final award or such final decision upon which such judgment is entered the court shall in entering judgment thereon, tax as costs against him the reasonable costs and attorney fees in the arbitration proceedings and in the court entering the judgment for the person in whose favor the judgment is entered,** which judgment and costs taxed as therein provided shall, until and unless set aside, have the same effect as though duly entered in an action duly tried and determined by the court, and shall with like effect, be entered and docketed.

820 ILCS 305/19(g) (emphasis added).

■ The Court must give effect to the clear language of the statute. *E.g., Matter of Thirtyacre*, 36 F.3d at 700. It is apparent from the face of 820 ILCS 305/19(g) that its purpose is to allow an injured employee, whose employer has refused to pay the award rendered in the administrative proceeding, to reduce the award to judgment in the state court and to obtain compensation for the additional court costs and attorney fees he has been compelled to incur due to the employer's refusal to pay the award. *See, e.g., Evans v. Corporate Servs.*, 207 Ill. App.3d 297, 152 Ill.Dec. 191, 195, 565 N.E.2d 724, 728 (1990); *Franklin v. Wellco Co.*, 5 Ill.App.3d 731, 283 N.E.2d 913, 915 (1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973). Clearly, the judgment to be entered, which includes the taxed costs and attorney fees, is in favor of the workers' compensation claimant rather than the attorney. *See also* 820 ILCS 305/16a(I) (providing that all attorney fees for representation of an employee are only recoverable from compensation actually paid to the employee). Accordingly, attorney Rich is not the proper party to assert a claim for attorney fees pursuant to 820 ILCS 305/19(g), nor to challenge the dischargeability of such fees in the employer's bankruptcy case. His claim, set forth in Count II of the amended complaint, must be dismissed.

■ The only question remaining is whether Riddle has stated a claim for relief as to the dischargeability of any attorney fees due him under 820 ILCS 305/19(g). The Court will examine first defendant's contention that Riddle fails to state a claim for relief because his claim for attorney fees under 820 ILCS 305/19(g) has not yet been reduced to judgment.

Section 523(a)(6) contains no requirement that the plaintiff have a judgment prior to bringing an action under this section. *E.g., In re Moore*, 53 B.R. 259, 261 (Bankr. S.D.Ohio 1985). Rather, the section speaks to the dischargeability of "any debt." 11 U.S.C. § 523(a)(6). "Debt" is defined by the Bankruptcy Code to mean "liability on a claim," 11 U.S.C. § 101(12), and its meaning is, in fact, " 'coextensive with that of "claim" as defined in § 101(5).' " *In re Dahlstrom*, 129 B.R. 240, 241 (Bankr.D.Utah 1991) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 84 n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991)). Subsection 101(5)(A), the provision relevant to this analysis, then defines "claim" as a "right to payment, **whether or not such right is reduced to judgment,** liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5)(A) (emphasis added). Thus, "claim" and, by implication, "debt" are defined expansively by the Bankruptcy Code to include the broadest possible range of obligations of whatever character against a debtor or its property. *See, e.g., In re Dahlstrom*, 129 B.R. at 241–42. The statute clearly provides that a debt need not be reduced to judgment to be held nondischargeable under § 523(a)(6), and defendant's argument to the contrary has no merit.

Knapp argues next that the claim for attorney fees should be stricken from the complaint because Riddle has not sufficiently pled facts showing that Knapp is able to pay the workers' compensation award, yet re-

fuses to pay it. As pointed out earlier, Riddle has not even pled the section of the Workers' Compensation Act giving rise to his claim for attorney fees. Nor has he pled sufficient elements of the statute for the Court to identify with absolute certainty the statutory section under which he proceeds. However, Riddle does not appear to ask the Bankruptcy Court to determine his entitlement to attorney fees under state law. Rather, he seeks only a determination that any amounts (including attorney fees) he is awarded under Illinois' Workers' Compensation Act are nondischargeable under 11 U.S.C. § 523(a)(6). While it might be advisable for Riddle to amend Count I to set forth the basis of his claim for attorney fees under state law, he need not do so in order to state a claim for relief as to the dischargeability of the fees.