In re Louis A. VAMVAKARIS,
Chapter 7 Debtor.

Roy L. KAUFMAN, Trustee for the
Robin Slane Wier Revocable
Trust, Plaintiff,

v.

Louis A. VAMVAKARIS, Defendant.

Bankruptcy No. 94–13373–AT.
Adv. No. 95–1094–AT.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 20, 1996.

Kevin M. O'Donnell, McKinley, Schmidtlein, O'Donnell & Bornmann, P.L.C., Alexandria, Virginia, for Plaintiff.

Louis Vamvakaris, Vienna, Virginia, for Debtor/Defendant.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial on plaintiff's complaint to except debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) was held on December 6, 1995. Debtor defendant appeared pro se. For reasons stated in this opinion judgment will be entered for the debtor and the complaint dismissed.

### Facts

Plaintiff is the trustee of the Robin Slane Wier Revocable Trust. During 1993 the

Wier trust assets included a valuable jewelry collection which plaintiff wished to sell for reinvestment purposes.

In September 1993, plaintiff met with debtor who was a jewelry dealer and appraiser with a shop in Manassas, Virginia. They discussed debtor's selling the trust jewelry collection. One of plaintiff's concerns was the safety of the collection, and he questioned debtor about theft insurance coverage. Debtor represented to plaintiff that debtor was "adequately covered" by theft insurance.

On September 15, 1993, debtor went to plaintiff's home where debtor took an inventory of the collection and had each item photographed. Debtor later gave plaintiff a list of the jewelry which debtor had itemized and valued at a total of approximately $60,000.00.

Plaintiff left the jewelry collection with debtor for sale in debtor's business location.

On October 27, 1993, debtor called plaintiff and told him there had been a disappearance of jewelry from debtor's store. The loss was reported to the police and treated as a theft. The missing items included five rings belonging to the Wier trust. Debtor also advised plaintiff that the theft had been reported to his insurance company.

The value of the trust's missing rings, which were never recovered, was $26,000.00. Debtor offered to pay plaintiff a portion of the loss from debtor's own funds prior to any insurance recovery.

On November 10, 1993, debtor sent plaintiff a check in the amount of $17,000.00 in partial payment for the lost rings. In his transmittal letter, debtor stated that he did not know when the insurance company would reimburse the loss and requested plaintiff to cooperate with the insurance carrier if he was contacted.

After the theft, debtor continued to sell trust jewelry for which he remitted proceeds to plaintiff. On December 1, 1993, debtor brought plaintiff a check at which time debtor reassured plaintiff about the insurance coverage. For a period of time after this meeting, plaintiff did not hear from debtor and was unable to reach debtor by phone.

In the second week of January 1994, plaintiff telephoned debtor who told plaintiff there had been another theft outside a trade show attended by debtor in New York. Unknown thieves had broken into debtor's van and stole jewelry, including some owned by the trust. The jewelry was never recovered.

When debtor told plaintiff of the New York theft he also told plaintiff that there was no insurance coverage for the loss. In fact, at no time had debtor had theft insurance coverage which would have covered the loss of the Wier trust's jewelry.

The unreimbursed total value of the stolen and unrecovered jewelry of the Wier trust was $31,057.50. Debtor agreed prepetition to repay this amount to plaintiff and made one payment of $750.00 before filing this chapter 7 bankruptcy case in September 1994.

*Discussion And Conclusions*

■ Plaintiff delivered valuable jewelry to debtor for sale in debtor's jewelry business. In preliminary discussions, debtor represented to plaintiff that he carried theft insurance.

Subsequently, in two separate incidents, trust jewelry in debtor's possession was stolen. In October 1993 five rings disappeared from debtor's store. This incident was treated as a theft and investigated by police. Debtor repaid to plaintiff a portion of the value of the missing rings. There was a second loss of plaintiff's jewelry in January 1994 resulting from a break in of debtor's van outside a jewelry show in New York. Neither of these losses was covered by insurance. The plaintiff's net loss in jewelry value in the two incidents was $30,307.50.

It was implicit in plaintiff's testimony and other evidence at trial that plaintiff believed debtor may have been responsible for the October 1993 disappearance of jewelry from debtor's shop. However, no evidence was presented that debtor was in any way involved in either of the losses of jewelry.

In his testimony, debtor down played the importance of the theft insurance in his dealings with plaintiff and denied that he had misrepresented the coverage. Debtor said that while he knew he did not carry insur-

ance to protect against thefts of his own inventory, he believed he did have coverage for plaintiff's property. He claimed that the first theft was reported to his insurance carrier which subsequently denied coverage. However, other than his testimony debtor presented no evidence that he had filed a claim.

Plaintiff's documentary evidence revealed that during the time in question debtor did not carry insurance that would have protected plaintiff's jewelry from loss by theft. I have therefore concluded that before accepting delivery of the jewelry, debtor misrepresented or lied to plaintiff about having theft insurance coverage.

Plaintiff's complaint seeks to except the debt represented by the value of the lost jewelry from discharge under Bankruptcy Code §§ 523(a)(2)(A), (a)(4) and (a)(6).

*Section 523(a)(2)(A).*

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud ..." 11 U.S.C. § 523(a)(2)(A). It is well settled that the plaintiff challenging dischargeability under § 523(a)(2)(A) bears the burden of proof by a preponderance of the evidence to establish the following common law elements of fraud:

(1) that the debtor made misrepresentation or committed other fraud;

(2) that at the time the debtor knew the conduct was fraudulent;

(3) that the debtor's conduct was with the *intention and purpose* of deceiving or defrauding the creditor;

(4) that the creditor relied on the debtor's representations or other fraud; and

(5) that the creditor sustained loss and damage as the proximate result of the representations or fraud.

*Western Union Corp. v. Ketaner (In re Ketaner),* 154 B.R. 459, 464 (Bankr.E.D.Va. 1992).

Relying on the literal language of the five elements for discharge exception under § 523(a)(2)(A), plaintiff argues that debtor committed fraud in misrepresenting to plaintiff that he carried theft insurance, that plaintiff relied upon the representations and sustained loss as a proximate result.

The court rejects plaintiff's argument. The real issue of fraud here goes to the loss of jewelry and not to the lack of insurance. Thus, the loss was caused by thefts of jewelry. There is no evidence that debtor fraudulently intended to deprive plaintiff of the jewelry or that he was in any way responsible for the loss. Debtor's misrepresentations about insurance coverage were not the proximate cause of the plaintiff's loss.[1]

A second way to view the proximate cause issue is to concentrate on the "obtained by" language of § 523(a)(2)(A). The statute excepts a debt from discharge to the extent "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Plaintiff's argument implies that debtor obtained the jewelry when plaintiff gave the jewelry to debtor to sell on his behalf. He asserts that because debtor misrepresented his insurance coverage when plaintiff gave debtor the jewelry, debtor obtained the jewelry by fraud. In my view, plaintiff misconstrues the nature of the transaction, however. Turning over the jewelry to debtor so that debtor could sell the jewelry on plaintiff's behalf merely created a bailment. Under a bailment, only possession of property is transferred. The bailor at all times remains the true owner of the property. As a result, any rights that a bailee

---

1. Although it is not the basis for my ruling, I also have concerns about the absence of any evidence here of the type of insurance that debtor could have carried to protect plaintiff's trust jewelry from theft and the amount of recovery that could reasonably have been expected. Plaintiff's testimony was that debtor had represented, somewhat vaguely, that he carried "theft insurance." Plaintiff presumes but has furnished no evidence that theft insurance was available which would have provided full coverage for the types of losses suffered. Even if debtor had carried so called theft insurance, it might have been subject to a deductible. Moreover, debtor has suggested that theft insurance would not have covered the unexplained disappearance of jewelry from debtor's shop.

obtains in the property are narrowly defined and are usually limited to possession. Because a bailee's rights in property subject to a bailment are so limited, the court does not find that debtor as a bailee has "obtained" property as contemplated by § 523(a)(2)(A). In this case the property was not actually "obtained" for purposes of the statute until it was stolen. Up until that time, debtor could have simply returned any unsold jewelry along with proceeds from any sales, and no debt to plaintiff would have existed. Accordingly, the plaintiff must prove that fraud existed in connection with the two thefts, not when debtor and plaintiff entered into the bailment. Since plaintiff has failed to do so, the debt cannot be excepted from debtor's discharge under § 523(a)(2)(A).

*Section 523(a)(4).*

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;" 11 U.S.C. § 523(a)(4).

■ As was essentially acknowledged by plaintiff's counsel at trial, the elements of § 523(a)(4) have not been proven in this case.[2]

*Section 523(a)(6).*

■ Section 523(a)(6) excepts from discharge a debt that arose because of the debtor's willful and malicious injury to an entity or to the property of an entity. The use of the term entity rather than person broadens the scope of the exception. *See* 11 U.S.C. § 101(14) (definition of entity); 11 U.S.C. § 101(35) (definition of person). Here, the injury was to plaintiff, trustee of the Wier trust, and the Wier trust itself.

■ The term willful means " 'deliberate or intentional', a deliberate and intentional act which necessarily leads to injury." *Rountrey v. Lee (In re Lee)*, 90 B.R. 202, 207 (Bankr.E.D.Va.1988). As to malice, the Court of Appeals for the Fourth Circuit in *St. Paul Fire & Marine Ins. Co. v. Vaughn* wrote:

[T]here is no need to show specific malice under § 523(a)(6) of the Code on the part of the debtor. Something implied is no less true than something expressed. Only the method of proof is different. Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6).

*St. Paul Fire & Marine Ins. Co. v. Vaughn,* 779 F.2d 1003, 1010 (4th Cir.1985); *In re Lee,* 90 B.R. at 207.

The willful and malicious injury exception to discharge has been litigated over a variety of transactions, and it may come closer to the facts of the instant case than the fraud provisions of § 523(a)(2)(A).

However, I conclude that a willful and malicious injury to plaintiff's jewelry has not been established, and plaintiff cannot prevail under § 523(a)(6). As with the fraud issue, there is simply no evidence here of a correlation between debtor's misrepresenting his theft insurance coverage and the subsequent loss of plaintiff's jewelry. The debtor did not intend to cause injury. And even though debtor's misrepresentation may be considered a deliberate and intentional act, it did not directly or necessarily lead to the loss of plaintiff's jewelry.

I have been unable to find a case directly on point; however, there are comparable cases involving debtors who failed to carry insurance. While there is some split of authority, most of these cases support my rationale and my conclusion here.

In *LSI Fin. Group v. Perry (In re Perry),* 166 B.R. 319 (Bankr.M.D.Tenn.1994), a debtor's financed automobile was destroyed in an accident. The court held that debtor's failure to renew the automobile insurance was not a willful and malicious injury to the company that had financed the automobile. *See also Basham v. Druen (In re Druen),* 121 B.R. 509, 512 (Bankr.W.D.Ky.1990).

A number of bankruptcy courts have considered willful and malicious injury claims of injured employees against employer debtors

---

**2.** A bailee is not a fiduciary for purposes of § 523(a)(4). *Sager v. Lewis (In re Lewis),* 94 B.R.    406, 410 (Bankr.E.D.Va.1988).

who failed to maintain workmen's compensation insurance. The majority of these cases have been decided favorably to debtors and the debts held discharged. See the discussions in *Bailey v. Chatham (In re Bailey)*, 171 B.R. 703, 705–06 (Bankr.N.D.Ga.1994); and in *Collora v. Leahy (In re Leahy)*, 170 B.R. 10, 14 (Bankr.D.Me.1994).[3]

Since the evidence here does not support a finding for plaintiff under any of the cited code sections, a separate order will be entered dismissing plaintiff's complaint.

---

**3.** In my opinion, a factual scenario favoring the creditor in this type of case would require more of a causal connection between the failure of insurance coverage and the injury suffered. For an example, *see Hilliard v. Peel (In re Peel)*, 166 B.R. 735 (Bankr.W.D.Okla.1994), where the debtor employer failed to carry workmen's compensation insurance. The creditor employee was injured on the job. In holding that debtor's failure to carry workmen's compensation was a willful and malicious injury, the court relied heavily on the fact that the debtor's business was dangerous in nature, and the employee's injuries were reasonably foreseeable. The court also inferred malice from the fact that for several years debtor had unlawfully maintained a payroll deduction from the employee's wages, ostensibly for payment of workmen's compensation. *In re Peel*, 166 B.R. at 738–39.