**In re Lee MOGUL and Linda Mogul, Debtors.**

**MARYLAND NATIONAL BANK, Plaintiff,**

v.

**Lee MOGUL and Linda Mogul, Defendants.**

**Bankruptcy No. 82–02492–BKC–JAG.**
**Adv. No. 83–0337–BKC–JAG–A.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 5, 1984.

Charles W. Throckmorton, Miami, Fla., for Maryland National Bank.

Richard L. Freedman, Hollywood, Fla., for debtors.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding, plaintiff, Maryland National Bank, seeks a determination of non-dischargeability of a debt under 11 U.S.C. § 523(a)(6). The trial was held on August 1, 1983. In making the following findings and conclusions, the Court has considered the testimony at trial of Jack Sweeley, the Bank's representative, and of the debtor, Lee Mogul, and the deposition testimony of Peter Tyson and Thomas

Howland, as well as exhibits and documentary evidence introduced by the parties.

In October 1976, the debtors, Lee Mogul and Linda Mogul, borrowed the principal sum of $57,000 from the Bank. The loan was evidenced by a promissory note and security agreement, copies of which were received in evidence at trial. The indebtedness was secured by a preferred ship mortgage on a yacht known as the Gandy Dancer. The note, security agreement, and mortgage required the debtors to insure the Bank's interest on the vessel and to furnish the Bank with proof of such insurance.

Pursuant to these contractual requirements, the debtors initially did obtain an insurance policy on the yacht naming the Bank as loss payee. The term of this insurance policy ran from October 1976 (when the loan was closed) until October 1977.

The debtors never renewed the initial policy. In 1977, the debtors secretly obtained a new policy on the yacht from Chubb Insurance Companies. The policy was obtained through the Richard Bertram Insurance Agency in Miami. The debtors did not disclose the existence of the Bank's lien to the Richard Bertram Insurance Agency or to Chubb Insurance Companies, although these companies requested this information as part of the application procedure. This resulted in the omission of the Bank as a loss payee under the Chubb policy. The debtors did not inform the Bank that they had obtained the Chubb policy.

In November 1978, the yacht sank. The debtors collected $200,000 in insurance proceeds from Chubb Insurance Company, but did not reveal this fact to the Bank. The Bank never received any insurance proceeds as a result of the loss of the yacht. The debtors thus effectively disposed of the Bank's collateral without compensating the Bank for its interest in the collateral.

In 1981, the debtors defaulted on their loan from the Bank. At that time, through an independent investigation, the Bank learned, for the first time, of the loss of the vessel and of the debtors' receipt of the insurance proceeds. Mr. Mogul at first denied receiving the proceeds of the Chubb policy when questioned about it by the Bank, but subsequently admitted receiving them.

Defendants filed their voluntary petition under Chapter 7 of the Code on December 27, 1982. On April 5, 1983, the Bank filed its complaint for an exception to discharge. The uncontroverted evidence at trial established the balance of the Moguls' debt to the Bank in the amount of $46,655.12.

■ 11 U.S.C. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." The Court finds that the debtors' secret collection of the proceeds of the Chubb insurance policy, coupled with their intentional failure to maintain insurance on the yacht with the Bank as loss payee and their failure to advise the Bank of their purchase of the Chubb policy, constitutes a "willful and malicious injury" to the bank within the meaning of the statute. Section 523(a)(6) has been held to bar discharge of other debts in similar circumstances. *See, e.g., Matter of Ricketts,* 16 B.R. 833 (Bkrtcy.D.Ga.1982) (debtor's sale of boat which served as bank's collateral, where debtor knew that sale of boat would leave bank in an unsecured position); *In re Scotella,* 18 B.R. 975 (Bkrtcy.D.Ill.1982) (debtor's sale of boat serving as bank's collateral, and subsequent concealment of sale from bank); *Matter of Penning,* 22 B.R. 616 (Bkrtcy.D.Mich.1982) (debtor's sale of collateral without accounting for proceeds, in express violation of security agreement).

Mr. Mogul was aware of the requirement that the Bank's lien be insured. The Court finds that the debtors' actions, in derogation of the Bank's rights, were intentional. The Court does not find Mr. Mogul's explanation, that he believed that the debt had become unsecured after the first year of payments, to be credible. Mr. Mogul had experience in the Coast Guard and was aware of the fact that the preferred ship mortgage had been recorded with the Coast Guard and had never been cancelled of record.

**48**

The Court also rejects the debtors' argument that the Bank waived its right to insurance protection by failing to discover the debtors' secret acquisition of the insurance proceeds until the loan went into default. The Court finds no conduct on the part of the Bank which would evidence an intentional relinquishment or abandonment of this right. *In re Haines,* 10 B.R. 856 (Bkrtcy.D.Pa.1981). The debtors failed to show a clear case of such an implied waiver. *Matter of Garfinkle,* 672 F.2d 1340 (11th Cir.1982).

Accordingly, the $46,655.12 debt owed to plaintiff, Maryland National Bank, by the debtors, Lee Mogul and Linda Mogul, is hereby declared to be a non-dischargeable debt. As required by Bankruptcy Rule 9021(a), a separate judgment in favor of the plaintiff and against the debtors in the amount of $46,655.12 will be entered.