**In the Matter of Scott A. USSERY, Debtor.**

**BARNETT BANK OF SOUTHEAST GEORGIA, N.A., Plaintiff,**

v.

**Scott A. USSERY, Defendant.**

**Bankruptcy No. 94–20390.
Adv. No. 94–2048.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 15, 1995.

Bob Cunningham, Brunswick, GA, for plaintiff.

O. Brent Green, Kingsland, GA, for defendant.

### MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Chief Judge.

Trial of the above-captioned adversary proceeding was held in Brunswick, Georgia, on February 9, 1995. After considering the evidence adduced at trial and the applicable authorities, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor, Scott A. Ussery, filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 29, 1994. On October 21, 1994, Barnett Bank of Southeast Georgia, N.A. ("Barnett") initiated the instant adversary proceeding seeking a determination that the cost to repair a vehicle, which Debtor owns and in which Barnett holds a security interest, is a debt that is non-dischargeable in Debtor's bankruptcy case pursuant to section 523(a)(6) of the Bankruptcy Code.[1]

The parties stipulated to the following material facts at trial. Prior to filing his petition under Chapter 7, Debtor owned a 1993 Plymouth Laser automobile. Debtor remains in possession of the vehicle today. Barnett holds a perfected first-priority security interest in the vehicle, which secures a debt of approximately $15,000.00.

On June 3, 1994, Debtor cancelled the comprehensive insurance policy covering the vehicle. Barnett had been duly named as the loss payee in the insurance policy. On June 5, 1994, two days after Debtor cancelled the insurance coverage, a tree under which the Debtor had parked the vehicle fell on the automobile during a violent storm, causing an estimated $6,203.61 in damage to the car. Had Debtor not cancelled the policy, the

damage to the vehicle would have been a covered loss.

Debtor was the only witness to testify at trial. He testified that he understood that he was obligated to maintain comprehensive insurance on the vehicle and to name Barnett as the loss-payee. Debtor removed the insurance because he could no longer afford to keep the car and planned to sell it. He did not drive the car after cancelling the insurance and he would not have allowed anyone else, such as a prospective purchaser, to drive it unless they had their own insurance.

Debtor characterized the circumstances under which the tree fell upon the car as a freak accident. He indicated that he had no idea that the tree was weak or otherwise susceptible to falling during heavy winds. Debtor also testified that he had attempted to get the vehicle repairs covered under his homeowner's insurance policy, but was unable to do so.

Barnett introduced, as a stipulated exhibit, the retail sales contract under which Debtor purchased the vehicle. *See* Exhibit P-1. The contract clearly requires Debtor to maintain comprehensive insurance on the vehicle and to name Barnett as the loss-payee as long as Debtor remains indebted to Barnett. *Id.*

Based on these facts, Barnett asserts that Debtor acted in a willful and malicious manner when he cancelled the insurance policy, and that it suffered an injury of $6,203.61, the estimated cost of repairing the vehicle, as a result of Debtor's willful and malicious actions. Accordingly, Barnett requests that this court enter judgment declaring $6,203.61 to be a non-dischargeable debt in Debtor's bankruptcy case.

Debtor, on the other hand, contends that, while he intentionally removed the insurance, he did not act in a willful and malicious manner because the removal of insurance was not an act certain to cause financial harm to Barnett. Thus, according to Debtor, the damage to the car was an unforeseeable

---

1. Barnett also sought in its Complaint a denial of Debtor's discharge under Section 727 of the Code. Counsel for Barnett indicated at trial, however, that Barnett would not be pursuing a denial of Debtor's general discharge in this proceeding.

"act of God," rather than a natural consequence of his removal of insurance coverage.

## CONCLUSIONS OF LAW

Because there are no material facts in dispute, the narrow issue presented in this proceeding is whether Debtor's cancellation of insurance, in violation of an express contractual requirement to insure, inflicted a "willful and malicious injury" upon Barnett's interest in the vehicle, which interest was injured when the vehicle suffered physical damage that would have been covered under the required insurance. The provision of the Bankruptcy Code that excepts from discharge a debt arising from a "willful and malicious injury" is section 523(a)(6), and it, in relevant part, provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

11 U.S.C. § 523(a)(6).

■ In order to except a debt from discharge under section 523(a)(6), a creditor must prove by a preponderance of the evidence that the creditor or property of the creditor suffered an injury as a result of a debtor's willful and malicious actions.[2] "Willful" denotes an intentional or deliberate act, while "malicious" encompasses both actual and constructive malice. *See In re Ikner*, 883 F.2d 986, 989 (11th Cir.1989); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988). "Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice." *Ikner*, 883 F.2d at 991 (citations omitted). "No showing of personal hatred, spite or ill-will is required to prove an injury malicious; it is enough that it was 'wrongful and without just cause or excuse'." *In re Lindberg*, 49 B.R. 228, 230 (Bankr.D.Mass.1985) (*quoting In re Askew*, 22 B.R. 641, 643 (Bankr. M.D.Ga.1982), *aff'd, Askew v. Brawner*, 705 F.2d 469 (11th Cir.1983)). Hence, an injury is considered "willful" if it is intentional and

"malicious" if it results from an intentional or conscious disregard for one's duties. *Id.* *See also Matter of Whipple*, 138 B.R. 137, 139–40 (Bankr.S.D.Ga.1991).

■ Debtor concedes that he intentionally cancelled the insurance policy on his vehicle. Moreover, he did so knowing full well that the sales contract under which he purchased the vehicle required him to maintain insurance on the vehicle in order to protect Barnett's interest. Thus, Debtor consciously disregarded this obligation when he canceled his policy. Facially, then, Debtor's cancellation of insurance coverage was both willful and malicious.

Debtor, however, argues that, while he willfully cancelled the insurance with knowledge of his obligation to insure, he did not willfully or maliciously injure Barnett's interest in the vehicle because his removal of insurance coverage was not certain to cause financial harm. It is certainly true that some further event, in this case the collapse of the tree under which the vehicle was parked, had to occur before Barnett's interest in the vehicle was damaged. Nevertheless, while Debtor's cancellation of insurance was not certain to harm Barnett's interest in the vehicle, it did ensure that Barnett would be exposed to such harm in the event that the vehicle was somehow damaged, whether as a result of Debtor's intentional, negligent, or, as in this case, non-negligent actions. The question thus becomes whether a debtor's cancellation of insurance coverage, which is certain only to expose another party to the risk that it will suffer an uninsured loss in the event that an accident to person or property occurs, is sufficient to find a "willful and malicious injury" under section 523(a)(6).

This court has twice before confronted this precise question in the context of a debtor's failure to maintain insurance required under state law. In both cases, I concluded that, when a third party had suffered an injury that would have been compensable under the insurance required by state law, a debtors' knowing failure to carry that insurance in-

**2.** *See Matter of Lutz*, 169 B.R. 473, 477 (Bankr. S.D.Ga.1994); *Matter of George Leon Day (Western Temporary Services, Inc. v. George Leon Day)*, Adv.Pro. Nos. 91–4083, 91–4138, Ch. 7 No. 91– 40674, slip op. at 18, 1993 WL 734838 (Bankr. S.D.Ga. April 13, 1993) (*citing Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

flicted a willful and malicious injury upon the third party. *See Matter of Whipple,* 138 B.R. 137, 141 (Bankr.S.D.Ga.1991) (automobile liability coverage in the statutory minimum amount); *Matter of Saturday,* 138 B.R. 132, 136 (Bankr.S.D.Ga.1991) (workers' compensation insurance).

The debtor in *Whipple* had negligently caused an auto accident while operating her vehicle without the basic auto liability insurance required under Georgia law. The party injured in the accident obtained a default judgment against the debtor, which the debtor sought to discharge as part of her Chapter 13 plan. The injured party objected to confirmation of the plan, contending that, because the debt would be nondischargeable in a Chapter 7 case pursuant to section 523(a)(6), the plan had not been proposed in good faith as required under section 1325(a)(3).

Because the debtor was, at the time of the collision, operating her vehicle with full knowledge that she did not have the statutorily required insurance, I concluded that the debtor's failure to maintain insurance was both willful and malicious. *Whipple,* 138 B.R. at 140–41. I also concluded that the debtor's willful and malicious act had inflicted an injury upon the objecting creditor, at least to the extent of the insurance coverage that would have been available had the debtor complied with state law:

> I find that the failure to insure necessarily results in an injury. The party who is injured by an uninsured driver automatically has an impaired ability to recover compensation. The act of driving uninsured destroys the fund from which at least minimum compensation can be recovered. At best the injured party's recovery is delayed since collection form the at-fault driver's personal assets will inevitably be more difficult, expensive and piecemeal. At worst there will be no recovery at all in

the case of a judgment-proof defendant. In either case the party suffering personal injury suffered another, distinct economic injury as a result of the lack of insurance. *Id.* at 140–41.[3]

The debtor in *Saturday* had employed a number of workers in his moving business without obtaining the workers' compensation insurance required by Georgia law. The debtor knew of his obligation to maintain this insurance, but disregarded it due to the costs involved. One of the debtor's employees suffered an injury to his back during the course of his employment. An Administrative Law Judge ultimately found that the debtor had "willfully neglected" to carry the required insurance, and ordered the debtor to pay recompense to the worker, including penalties and attorney's fees, in a lump-sum payment. The debtor subsequently filed Chapter 7 and sought discharge of the debt. The injured worker brought an action seeking a determination that the debt was non-dischargeable under section 523(a)(6).

Noting a split among bankruptcy courts on the issue, this court concluded that the knowing failure to maintain the required workers' compensation insurance inflicts a willful and malicious injury upon a worker who is subsequently injured, even though the failure to insure is not the act that causes physical injury:

> It is true that the act of failing to provide insurance does not cause a worker's physical injury. However, it is foreseeable that workers will sustain on-the-job injuries and to the extent that an employer fails to provide insurance as required by law that failure necessarily causes an economic injury to any worker who sustains a physical one.

*Saturday,* 138 B.R. at 135.[4]

Thus, this court has twice held that a debtor's knowing failure to carry statutorily

---

**3.** *Cf. Matter of Phillips,* 153 B.R. 758, 763 (Bankr.E.D.Mich.1993) (noting that a failure to maintain insurance in knowing breach of contract might constitute willful and malicious injury); *In re Mogul,* 36 B.R. 46, 47 (Bankr.S.D.Fla. 1984) (debtor's secret collection of proceeds from secret insurance policy, combined with intentional failure to maintain insurance on yacht,

inflicted a willful and malicious upon secured creditor when yacht sank).

**4.** *Accord In re Peel,* 166 B.R. 735, 738–39 (Bankr. W.D.Okl.1994); *In re Verhelst,* 170 B.R. 657, 661–62 (Bankr.W.D.Ark.1993); *In re Strauss,* 99 B.R. 396, 399–400 (N.D.Ill.1989); *In re Erickson,*

required insurance inflicts a willful and malicious injury when a party suffers an injury that would have been compensable, in whole or in part, under the mandated insurance. The injury is economic, and it is willful and malicious because the debtor intentionally exposes the third party, whether known or unknown, to the risk that it will be unable to recover for an injury that would have otherwise been covered under the required insurance.

This view is not, however, unanimously held. Many courts, focusing upon the fact that the intentional failure to insure is not the act that causes physical injury, have concluded that a willful and malicious injury does not result from a debtor's knowing failure to carry mandatory insurance:

> An automobile collision is not necessarily the result of a debtor's intentional act of driving without insurance. Paraphrasing the Restatement of Torts, a debtor does not have knowledge the act of driving without insurance is substantially certain to result in an automobile collision. Even though a reasonable person would not drive without insurance, such an act does not result in an automobile collision. Therefore, this court holds that the act of driving without Michigan no-fault insurance is not "willful" pursuant to § 523(a)(6).

*In re Adams,* 147 B.R. 407, 415 (Bankr. W.D.Mich.1992).[5] Similar reasoning is evident in the workers' compensation cases:

> The [Debtors] were no doubt negligent, and may even have breached an express agreement in failing to provide workers' compensation insurance to their employ-

ees. However, the default by itself was not willful, since the omission per se did not cause the Plaintiff financial or physical injury ... Failing to maintain insurance certainly created a risk that the employer might incur a personal financial liability, but that result was not so predestined that the Debtors' conduct may be deemed willful or malicious, as a matter of law. The fact that [Plaintiff] was in fact injured on the job was not so inevitable that the failure to have insurance constituted a willful and malicious act.

*In re Frias,* 153 B.R. 6, 8 (Bankr.D.R.I. 1993).[6]

This is a difficult issue. Certainly, the reasoning of these courts is not unsound or without merit. However, I hold to the position enunciated in my earlier decisions. The cases, admittedly a majority, which hold otherwise in the automobile collision context, focus on the act of driving to the exclusion of the separate and distinct act of intentionally, knowingly and in violation of state law,[7] driving an automobile without the statutorily or contractually required insurance coverage. These courts typically dismiss the act of driving without insurance as one which does not "necessarily lead to injury" because the injury is not the inevitable outcome of lack of insurance, but is the inevitable outcome of negligence. *In re Druen,* 121 B.R. at 511.

The weakness I perceive in this analysis is that in a case where the act of driving is itself worse than merely negligent, courts have had no difficulty in finding the driving act alone sufficient to constitute a willful and malicious injury.[8] In such a case, when the

---

89 B.R. 850, 852 (Bankr.D.Idaho 1988); *In re Holmes,* 53 B.R. 268, 270 (Bankr.W.D.Pa.1985).

**5.** *Accord Pechar v. Moore,* 98 B.R. 488 (D.Neb. 1988); *In re McConnehea,* 96 B.R. 121 (S.D.Ohio 1988); *In re Grisham,* 177 B.R. 306 (Bankr. W.D.Mo.1995); *In re Perry,* 166 B.R. 319, 322 (Bankr.M.D.Tenn.1994); *In re Bex,* 143 B.R. 835 (Bankr.E.D.Ky.1992); *In re Druen,* 121 B.R. 509 (Bankr.W.D.Ky.1990); *In re Eberhardt,* 92 B.R. 773 (Bankr.E.D.Tenn.1988); *In re Granda,* 98 B.R. 598 (Bankr.S.D.Fla.1989).

**6.** *Accord Szewczyk v. Wojtaszek,* 164 B.R. 604, 606 (N.D.Ill.1994); *In re France,* 138 B.R. 968, 973 (D.Colo.1992); *Matter of Bailey,* 171 B.R.

703 (Bankr.N.D.Ga.1994); *In re Betts,* 174 B.R. 636 (Bankr.N.D.Ga.1994); *In re Leahy,* 170 B.R. 10, 16 (Bankr.D.Me.1994); *In re Annan,* 161 B.R. 872, 873 (Bankr.D.R.I.1993); *In re Kemmerer,* 156 B.R. 806, 809–10 (Bankr.S.D.Ind.1993); *In re Mazander,* 130 B.R. 534, 537 (Bankr. E.D.Mo.1991); *Matter of Hampel,* 110 B.R. 88 (Bankr.M.D.Ga.1990).

**7.** And in violation of a court injunction in at least one case. *See In re Perry,* 166 B.R. at 320, n. 1.

**8.** *See e.g., In re Adams,* 147 B.R. at 416 (although unwilling to find willfulness from driving without required insurance, the court did conclude that "both the combined act of speeding and running the

debtor's conduct behind the wheel is egregious, it makes no difference whether debtor was insured or not. All the damages flowing from that egregious conduct are held nondischargeable, based simply on the debtor's conduct behind the wheel of the car. Yet the debtor has committed a separate willful act of non-compliance with his contractual obligations, and/or state insurance laws. This separate act is one which does not "inevitably" cause a loss, but if there is an insurable event, the act of driving without insurance necessarily leads to a separate economic injury. The injury is not measured by the extent of all injuries sustained, but is limited to the extent of the required coverage.

To further illustrate the distinction, I question whether the courts following the majority rule would allow a debtor, who is an insurance agent that accepted premiums from a client for coverage and converted the funds to personal use, to discharge a debt that arises when the client suffers a loss because no coverage was bound. In such a case, however, the majority line of cases carried to their logical conclusion would dictate a discharge under section 523(a)(6) because it is not the agent's failure to procure coverage that "necessarily" leads to the loss, but rather the intervention of someone else's negligent driving, on-the-job injury, theft or vandalism, or illness. Supportive of my view is the case of *In re Dorsey*, 162 B.R. 150 (Bankr.N.D.Ill.1993), where the court never suggested that the insureds could not prevail because it was the family member's illness which caused their loss, rather than their agent's misrepresentations,[9] and yet the failure of the agent to write the coverage as represented did not inevitably cause any loss. The loss only occurred when another event— the illness—occurred. Because Dorsey knew of "the likely prospect that the Caseys would

be injured financially" if a medical claim arose, the act was held to be willful and malicious. *Id.* at 156. Surely the holding would have been the same if a casualty agent failed to write automobile coverage and his insureds had to pay an insured loss out-of-pocket, even though they or a third party might have been negligent.

I remain convinced that the result should be no different where the debtor is the actor who wrongfully and knowingly fails to provide coverage and is also negligent behind the wheel. When the "insured" event occurs, this failure to insure inevitably causes financial injury, separate and distinct from the personal injury. I therefore reaffirm my previous decisions in *Whipple* and *Saturday*. Applying the principle from these cases to the present proceeding, it is clear that the damage to Barnett's interest in the vehicle was the result of a willful and malicious injury caused by Debtor's cancellation of insurance coverage in violation of his contractual obligation to maintain such insurance. The Debtor clearly had no personal ill-will toward Barnett. He was motivated by economic pressure to drop the coverage and apparently was cognizant enough of the consequences of his cancellation that he elected not to drive the car, an act that would have exposed it to greater risk of collision. However, the very act of cancelling the insurance, while maintaining possession of the car, did increase Barnett's risk. The car might have been stolen or vandalized. Instead it was struck by a falling tree during a storm. This risk is remote, but foreseeable, as evidenced by the fact that Barnett required Debtor to insure the car against risks of the very character of loss which actually occurred. Debtor acted intentionally and in disregard of Barnett's rights when he cancelled the insur-

the red light are 'willful' pursuant to section 523(a)(6).").

9. For bankruptcy dischargeability determination under section 523(a)(6) it is not required that Dorsey had any specific intent to injure the Caseys, merely that he had intent to perform the act of misrepresenting the coverage in the policy he sold them. *See In re Guy*, 101 B.R. 961, 982 (Bankr.N.D.Ind.1988). The Court

concludes that Dorsey's actions were "malicious" because he possessed knowledge at the time of his misrepresentations to the Caseys that if a medical or hospital claim were to arise, the Caseys would bear the first $10,-000.00 of the medical expenses, in contrast to receiving comparable benefits which they had previously enjoyed under their existing policy, pursuant to which they only had to bear the cost of a $500.00 deductible.
*In re Dorsey*, 162 B.R. at 156.

ance. Accordingly, the cost to repair the vehicle, $6,203.61, shall be excepted from Debtor's discharge as a debt arising from a willful and malicious injury under section 523(a)(6).

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that judgment be entered in favor of Plaintiff, Barnett Bank of Southeast Georgia, N.A., and against Defendant/Debtor, Scott A. Ussery, in the amount of $6,203.61, and that said sum shall be excepted from any discharge entered in Defendant/Debtor's Chapter 7 case.