In re James N. POURDAS, Debtor.

Carol PRATT and Kenneth Pratt, Individually, and Carol Pratt and Kenneth Pratt, as Parents and Next Friends of Brandon Joseph Pratt, a Minor, Plaintiffs,

v.

James N. POURDAS, Defendant.

Bankruptcy No. 95–32397.
Adversary No. 96–3072.

United States Bankruptcy Court, S.D. Illinois.

March 25, 1997.

Gary A. Mack, Katzman & Mack, Belleville, IL, for Plaintiffs.

Morgan Scroggins, Granite City, IL, for Defendant.

## *OPINION*

KENNETH J. MEYERS, Bankruptcy Judge.

Plaintiffs filed the instant adversary proceeding seeking a determination that a debt owed by James Pourdas ("debtor") is nondischargeable as a "willful and malicious injury" under 11 U.S.C. § 523(a)(6). The relevant facts are as follows:

A Granite City, Illinois, ordinance provides that no person shall possess a pit bull dog within city limits for a period of more than forty-eight hours without obtaining a license.[1] In order to obtain a license, the owner must file with the city clerk an application for a license to possess the pit bull dog. The application must be accompanied by, among other things, evidence of insurance coverage for any injury, damage or loss caused by the

---

1. Granite City Ordinance 6.10.020(A) provides that:

No person shall possess any pit bull dog for a period of more than forty-eight hours without

having first obtained a license therefor from the city.

Granite City, Il., Ordinance 6.10.020(A) (October 1989).

pit bull dog.[2] While no specific dollar amount of insurance is required, the ordinance provides that the insurance must be in an amount not less than $300,000.00.[3]

Debtor, a Granite City resident, owned a pit bull dog. Debtor's pit bull, without provocation, attacked Brandon Joseph Pratt, a minor, in a public alleyway, causing injuries. Debtor had not obtained a license for ownership of the dog and did not have insurance at the time of the attack.

The child and his parents, plaintiffs in the instant case, filed a "Petition for Finding of a Vicious Dog" in the Third Judicial Circuit, Madison County, Illinois. A full and complete hearing on plaintiff's petition was held on June 7, 1993. Pursuant to an agreed order signed by both plaintiffs and debtor on that date, debtor's pit bull was found to be a vicious animal as defined by Illinois statute,[4] and the dog was euthanized. In addition, as a result of the attack, debtor was found guilty on June 14, 1994, of violating an ordinance entitled "Dogs Running at Large."

On December 9, 1993, plaintiffs filed a complaint against debtor in the Circuit Court of Madison County for violation of the Illinois "dog bite" statute.[5] On September 6, 1995, a default judgment was entered against debtor in the amount of $150,000.00.

Thereafter, debtor filed a Chapter 7 petition in bankruptcy. The plaintiffs then filed this complaint to determine dischargeability under 11 U.S.C. § 523(a)(6) and moved for entry of summary judgment. In their motion for summary judgment, plaintiffs argued that debtor's failure to procure insurance was willful and malicious, rendering the $150,-000.00 judgment nondischargeable pursuant to § 523(a)(6). Plaintiffs further argued that debtor's ordinance and statutory violations, in and of themselves, constitute willful and malicious injuries. In an opinion entered October 30, 1996, the Court denied plaintiff's motion. The complaint was then scheduled for trial.

At trial, plaintiffs did not raise any questions regarding the manner in which the pit bull had been confined. Nor did plaintiffs

---

**2.** Granite City Ordinance 6.10.020(B)(4) states in pertinent part:

> An application for a license to possess a pit bull dog shall be filed with the city clerk on a form prescribed and provided by the city clerk and shall be accompanied by all of the following:
>
> .  .  .  .  .
>
> 4. A certificate of insurance evidencing coverage in an amount not less than three hundred thousand dollars providing coverage for any injury, damage, or loss caused by the pit bull dog. . . .

Granite City, Il., Ordinance 6.10.020(B)(4) (October 1989).

**3.** *Id.*

**4.** Although the Madison County Circuit Court order dated June 7, 1993, does not specify which Illinois statute it relied on in determining that the pit bull was a "vicious animal," the Court presumes that the Circuit Court relied on 510 ILCS 5/15(a), which states in pertinent part:

> § 15.   (a) For purposes of [the Animal Control Act]:
> (1) "Vicious dog" means:
> (i) Any individual dog that when unprovoked inflicts bites or attacks a human being or other animal either on public or private property.
> (ii) Any individual dog with a known propensity, tendency or disposition to attack without provocation, to cause injury or to other-

wise endanger the safety of human beings or domestic animals.
> (iii) Any individual dog that has as a trait or characteristic and a generally known reputation for viciousness, dangerousness or unprovoked attacks upon human beings or other animals, unless handled in a particular manner or with special equipment.
> (iv) Any individual dog which attacks a human being or domestic animal without provocation.
> (v) Any individual dog which has been found to be a "dangerous dog" upon 3 separate occasions.
> No dog shall be deemed "vicious" if it bites, attacks, or menaces a trespasser on the property of its owner or harms or menaces anyone who has tormented or abused it or is a professionally trained dog for law enforcement or guard duties. Vicious dogs shall not be classified in a manner that is specific as to breed.
> If a dog is found to be a vicious dog, the dog shall be subject to enclosure.

510 ILCS 5/15(a)(1) (1993).

**5.** Section 16 of the Illinois Animal Control Act provides, "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (1993).

argue that debtor acted willfully and maliciously in allowing the dog to "run at large." Rather, plaintiffs argued only that debtor's failure to procure the required insurance was willful and malicious.[6] Debtor was the only witness to testify at trial. After hearing his testimony and the arguments of counsel, the Court took the complaint under advisement and must now decide whether debtor's failure to obtain insurance was willful and malicious under § 523(a)(6).

Bankruptcy Code § 523(a)(6) provides that:

A discharge under section 727 ... does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). The courts are divided as to the meaning of "willful" and "malicious" within the context of § 523(a)(6). "Much of the struggle has centered on the degree to which an intent to harm or the inevitability of harm is a component of one or both words." *In re Knapp,* 179 B.R. 106, 108 (Bankr.S.D.Ill.1995) (citations omitted).

In *Matter of Scarlata,* 979 F.2d 521 (7th Cir.1992), the Seventh Circuit let stand decisions of the bankruptcy and district courts that a debtor did not act maliciously because his conduct would not "automatically or necessarily" injure the plaintiff. *Id.* at 526–28. However, the court refused to define "malice," terming it "a difficult question of first impression" and finding that the issue was not squarely before it. *Id.* Likewise, the court refused to determine whether malice requires the sort of actions that would "automatically or necessarily" harm the creditor, reasoning that the appellant had not properly identified and presented as error the district court's application of this standard. *Id.*

In a subsequent decision, the Seventh Circuit adopted a liberal definition of malice:

We give effect to the words of the statute by viewing their plain meaning. "Under § 523(a)(6), of the Bankruptcy Code, willful means deliberate or intentional ... [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm."

*Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) (quoting *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986) (citations omitted)). In adopting this definition of malice, the court rejected a more onerous standard requiring a showing of specific intent to do harm but left unanswered the question of whether malice—or willfulness—requires that the act "automatically or necessarily" cause injury.

There is a split of authority with respect to the specific question of whether failure to obtain insurance is willful and malicious. The majority of courts have concluded that it is not. *See, e.g., In re Walker,* 48 F.3d 1161 (11th Cir.1995); *In re Hall,* 194 B.R. 580 (W.D.Mich.1996); *In re Fields,* 203 B.R. 401 (Bankr.M.D.La.1996); *In re Bailey,* 171 B.R. 703 (Bankr.N.D.Ga.1994); *In re Kemmerer,* 156 B.R. 806 (Bankr.S.D.Ind.1993); *In re Mazander,* 130 B.R. 534 (Bankr.E.D.Mo. 1991); *In re Scott,* 13 B.R. 25 (Bankr.C.D.Ill. 1981).[7] These decisions focus on the lack of a direct causal link between the debtor's failure to insure and the subsequent event that produced the injury and actually gave rise to the debt in issue. More specifically, these cases hold that because another event must occur, namely, an injury to a person, the failure to procure insurance does not "necessarily" or "inevitably" lead to either

---

**6.** The adversary complaint itself contains no specific allegations that debtor's failure to obtain insurance was willful and malicious. Rather, the complaint alleges only that the state court judgment "is exempt from dischargeability in Bankruptcy Court because it is a willful and malicious injury by the Defendant...." However, the theory advanced by plaintiffs in their motion for summary judgment and at trial was that debtor acted willfully and maliciously when he failed to obtain the proper insurance.

**7.** With the exception of *Fields,* which involved a debtor who did not have automobile insurance, the other cited cases all concerned debtors who had failed to provide workers' compensation insurance. Although these cases are not factually similar to the case at bar, the legal analysis is the same.

personal injury or financial loss.[8]

Courts adopting the minority view—that failure to insure is willful and malicious—focus on the economic loss suffered by the creditor rather than on the actual physical injury. *See, e.g., In re Strauss,* 99 B.R. 396 (N.D.Ill.1989); *Matter of Ussery,* 179 B.R. 737 (Bankr.S.D.Ga.1995); *In re Peel,* 166 B.R. 735 (Bankr.W.D.Okla.1994); *In re Erickson,* 89 B.R. 850 (Bankr.D.Idaho 1988). These courts emphasize the foreseeability that the plaintiff will be injured and reason that if there is an insurable event, the failure to obtain insurance "necessarily leads to" or is "substantially certain to cause" a separate economic injury. For example, in *Matter of Ussery*—a case involving an injured employee—the court explained that "it is foreseeable that workers will sustain on-the-job injuries and to the extent that an employer fails to provide insurance as required by law[,] that failure necessarily causes an economic injury to any worker who sustains a physical one." *Matter of Ussery,* 179 B.R. at 740 (citing *Matter of Saturday,* 138 B.R. 132, 135 (Bankr.S.D.Ga.1991)).

■ The Court finds merit in both lines of authority but believes that the majority position is the better one. In the instant case, therefore, plaintiffs must establish that debtor's failure to obtain insurance was substantially certain to result in an economic injury.

■ It is clear that debtor's failure to obtain insurance was deliberate and intentional and, therefore, willful.[9] While debtor argues that he was unaware of the Granite City ordinance requiring insurance, the Court finds this argument to be without merit. All persons are presumed to know the law. The Court can only conclude that a person such as debtor, who owned a notoriously vicious animal[10] and who purposefully failed to inform himself of the safety requirements and responsibilities relating to the animal, acted in a willful manner.

■ Regretfully, however, the Court must find that debtor's failure to obtain the required insurance was not malicious within the meaning of § 523(a)(6). In order to find malice, the act in question—here, the failure to insure—must necessarily lead to or be substantially certain to cause harm.[11] *See In re Staggs,* 177 B.R. 92, 96 (N.D.Ind.1995) ("malicious" means a wrongful act done without just cause or excuse which necessarily produces harm); *In re Kemmerer,* 156 B.R. at 809 ("malicious" means a wrongful act done without just cause or excuse which is substantially certain to cause harm to another or another's property).

■ It is clear that debtor acted with reckless disregard of plaintiffs' rights when he failed to obtain the proper insurance. Moreover, debtor's failure to procure insurance was wrongful and without just cause or excuse. Debtor's failure to insure was not, however, "malicious" because harm to plaintiffs was not substantially certain to follow. Another event, namely, the actual physical injury, had to occur first. In short, debtor's

---

8. In addition, the Court in *Walker* was not convinced "that statutorily required workers' compensation benefits are property, distinguishable from the rights of any other creditor against a debtor." *In re Walker,* 48 F.3d 1161.

9. Under the Seventh Circuit's definition of willful, plaintiff must show that the defendant acted deliberately and intentionally. *Matter of Thirtyacre,* 36 F.3d at 700. The intent required is intent to do the act at issue, not intent to injure the victim. *In re Britton,* 950 F.2d 602, 605 (9th Cir.1991); *In re Staggs,* 178 B.R. 767, 773 (Bankr.N.D.Ind.1994), *aff'd,* 177 B.R. 92 (N.D.Ind.1995). *But see In re Walker,* 48 F.3d 1161, 1164–65 (11th Cir.1995) (in order to be willful under § 523(a)(6), debtor must have intended more than merely the act that results in injury).

10. Debtor testified that at the time he owned his dog, he did not know that pit bulls were "attacking" dogs. The Court finds that debtor lacks credibility on this point. Pit bulls are generally recognized as having vicious propensities, and it is simply unbelievable that debtor was unaware of this, particularly in view of the fact that he named his dog "Slayer" and testified that he wanted the dog for home protection.

11. Although the Seventh Circuit in *Thirtyacre* did not expressly determine whether malice requires that the act "automatically or necessarily" cause injury, the Court believes that adoption of this requirement is not inconsistent with the definition set forth in *Thirtyacre.* "The main thrust [of *Thirtyacre's* definition] is that 'malicious' does not require specific intent." *Matter of Staggs,* 177 B.R. 92, 96 (N.D.Ind.1995).

failure to insure was not the direct cause of plaintiffs' injury. While debtor's failure to obtain insurance created the possibility of financial harm in the future, acts producing the possibility of harm are negligent, but not malicious, within the meaning of § 523(a)(6). *See In re Scott,* 13 B.R. at 26–27.

Accordingly, for the reasons stated, the Court finds that judgment should enter in favor of debtor and against plaintiffs on the complaint.